In re Ronald E. SLOVER and Nancy J. Slover, his wife, Debtors. (Two Cases)

CRYSTAL CITY STATE
BANK, Plaintiff,

v.

Steven GOLDSTEIN, Trustee in Bankruptcy, Ronald E. Slover and Nancy J. Slover, his wife, Defendants.

Steven GOLDSTEIN, Plaintiff,

v.

Ronald E. SLOVER, Nancy J. Slover, United Postal Savings Association, Crystal City Savings Bank and Ms. Mae Kappel, Defendants.

Adv. Nos. 80–0308(3), 80–0345(3).
Bankruptcy Nos. 80–01809(3),
80–01809(3).

United States Bankruptcy Court,
E.D. Missouri, E.D.

July 7, 1986.

David P. Senkel, Hillsboro, Mo., for debtors.

Steven Goldstein, St. Louis, Mo., interim trustee.

**10**

David A. Lander, St. Louis, Mo., for trustee.

John V. LaBarge, Jr., Kirkwood, Mo., for United Postal Savings Assn.

Joseph P. Cunningham, III, Festus, Mo., for Mae Kappel.

Jack C. Stewart, Hillsboro, Mo., for Crystal City State Bank.

## MEMORANDUM

JAMES J. BARTA, Bankruptcy Judge.

The matters before the Court are based upon two adversary complaints which deal with claims to the same parcel of real property. In one complaint, the Crystal City State Bank has asked to establish a secured claim against the Debtors' real estate, and to determine that the Debtors' obligation in connection with the real estate is not dischargeable. The second complaint was filed on behalf of the Bankruptcy Trustee and seeks to determine the extent of various liens against the proceeds from the sale of said real property. At the time memoranda of law were submitted in these matters, the improved real property had not been sold. Later, in May, 1981, after approval by the Bankruptcy Court, the Trustee sold the property, netting $59,-506.28 which is now the subject of these proceedings. In view of the common interest in these complaints, this memorandum will dispose of all remaining questions in each case.

The United Postal Savings Association held a note and deed of trust dated March 23, 1979. No other entity claimed a superior interest, and therefore, United Postal was paid first from the proceeds of the sale after administrative expenses. Approximately $7,340.58 remains in escrow upon determination of the validity and extent of junior liens.

### I.

A claim of a lien interest has been asserted by Mae Kappel, the mother of Ronald Slover, co-debtor in this bankruptcy. The claim was presented as part of Mrs. Kappel's answer to the trustee's complaint, and is being considered here as being in the nature of a compulsory counterclaim. The facts were presented at the hearing through the testimony of Mrs. Kappel and Mr. and Mrs. Slover, the joint debtors here.

In late 1978 and early 1979, Mrs. Kappel and her son Ronald agreed that Mrs. Kappel's home would be sold, and that a portion of the "equity" she obtained would be given to Ronald. Ronald was to apply the money toward the purchase of a larger home, with the understanding that Mrs. Kappel and her daughter (Ronald's sister) would reside with the Slover family for the rest of Mrs. Kappel's life. In addition, the debtors were to receive a monthly payment of $300.00 from Mrs. Kappel so long as she and her daughter remained in the home.

The only written documents offered into evidence to support the above agreements were a cashier's check from Mrs. Kappel to Ronald E. Slover dated March 20, 1979, in the amount of $20,000.00 (Kappel Exhibit No. 1); a letter from Mrs. Kappel to the debtors, dated June 27, 1977 (Debtors' Exhibit No. 2). None of these documents are in the form of a deed of trust or other security interest, and no other writings were offered as evidence.

Shortly after moving into the new home, the family discovered drainage problems which caused the basement to flood during heavy rains. This apparently forced a delay in the construction of basement living quarters for Mrs. Kappel's daughter and Mrs. Slover's son. Other disputes erupted among the family members, and in October, 1979, Mrs. Kappel and her daughter moved out of the Slover home. On August 20, 1980, Ronald E. and Nancy J. Slover filed their voluntary joint petition under Chapter 7 of the Bankruptcy Code.

Mrs. Kappel testified that she gave the money to her son so that she and her daughter would have a place to live for the rest of her life. Ronald Slover testified that he always intended that the money would be paid back to Mrs. Kappel when the house was sold.

■ Mrs. Kappel's claim of a lien interest is based upon the theory of a constructive trust. A constructive trust is used by

a court of equity to effect restitution or to rectify a situation in which one has been wrongfully deprived of property or if a party has been unjustly enriched. *Mahler v. Tieman,* 550 S.W.3d 623 (Mo.App.1977); *Murphy v. Olds,* 508 S.W.2d 249 (Mo.App. 1974); *March v. Gerstenschlager,* 436 S.W.2d 6 (Mo.1969); *Skidmore v. Back,* 512 S.W.2d 223 (Mo.App.1974). The wrongful deprivations of property may have arisen from the violation of a confidence or from the commission of a fraudulent act by another. The fraud must be actual fraud established by direct or circumstantial evidence. *Cave v. Cave,* 593 S.W.2d 592 (Mo.App.1980).

However, a greater degree of proof may be necessary when the trust is to be impressed upon real property.

To establish a constructive trust in land an extraordinary degree of proof is required; proof so clear, cogent and convincing as to exclude all reasonable doubt from the mind of the court. *Mahler v. Tieman,* supra at 628; see also *Purvis v. Hardin,* 343 Mo. 652, 122 S.W.2d 936 (banc 1938).

The proof in this case has not established the existence of intentional fraud by or on behalf of Ronald and Nancy Slover. They did not initiate the discussions about the money, and there is no indication that their actions were intended to misrepresent the situation as it was presented, i.e., a transfer of money in connection with an assurance of future housing. The denomination of this transition as is supported by Mrs. Kappel's note (Debtors' Exhibit No. 2) dated February 25, 1979, which, although prepared at the request of Ronald Slover, was intended to be of assistance in obtaining financing for the balance of the purchase price of the home. The note states that Mae Kappel was giving her son $20,000.00 "as a gift" toward the purchase of a home. None of the evidence at the hearing in this matter suggested that the note was prepared under duress, involuntarily, or with a lack of understanding as to its meaning or import.

In the absence of actual fraud, there may be a constructive trust if there has been a breach of a confidential relationship between the parties.

Equity will look, in addition to fiduciary relationships, at instances where a special confidence is reposed in one party with a resulting influence on the other. The question is whether trust is reposed with respect to business affairs or property of the other. *Service Life Ins. Co. of Fort Worth v. Davis,* 466 S.W.2d 190, 196 (Mo.App.1971).

A mere sharing of blood ties or a family relationship is insufficient to establish the type of confidentiality required here. *Beach v. Beach,* 207 S.W.2d 481 (Mo.1947).

The evidence here does not support a finding that a confidential relationship existed between Ronald Slover and Mae Kappel such that his influence over her requires the imposition of a constructive trust upon his assets. Mrs. Kappel had been involved with homestead real estate purchases on two prior occasions. She was familiar with deeds of trust. She was employed at the time of this hearing. At the time of the gift to her son, she was working as a secretary at a real estate office. As a further indication of a lack of undue influence by Ronald Slover, Mrs. Kappel stated that she had consulted with another family member prior to transferring the money.

## II

Plaintiff Crystal City State Bank seeks to establish a secured claim in the proceeds from the sale of the real estate. On October 5, 1979, debtors borrowed $7,006.25 from the bank as a home improvement loan to complete a bath area and basement of the subject real estate. With finance charges of $3,719.71, the total sum of the loan was $10,725.96. Debtors executed a Promissory Note payable to plaintiff. As part of the same transaction, debtors also executed the following documents: (1) Agreement not to encumber or transfer property; (2) a Security Agreement (Consumer Goods) covering "home improvement with agreement not to encumber or transfer property"; and (3) personal loan disclosure statement. The bank filed

the Agreement Not to Encumber or Transfer Property, but not the security agreement with the Jefferson County, Missouri Recorder of Deeds Office on October 15, 1979. Subsequently, Debtors filed their Petition in Bankruptcy pursuant to Chapter 7 of Title 11 of the United States Code.

Plaintiff contends that at the time of the transaction the parties understood the loan to be secured by the real estate and the home improvements. Furthermore, plaintiff states that the Security Agreement Not to Encumber or Transfer Property, created a security interest in the real estate, or proceeds therefrom, in favor of the bank so as to create a lien with priority over all other liens or claims except that of United Postal Savings Association. The Bankruptcy Trustee opposes the bank's complaint to establish a claim because the Agreement Not to Encumber or Transfer Property is merely a personal covenant and not a mortgage or deed of trust and the Security Agreement in the home improvements fails to establish an equitable lien in the real property. The Court agrees with the Trustee's conclusions.

Section 101(37) of the Bankruptcy Code defines "security interest" as a "lien created by an agreement." Whether an agreement creates a lien depends on applicable state law. *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979).

There are no Missouri cases which specifically discuss the effect of an agreement not to encumber or transfer property or other negative covenants of this type. Nevertheless, other jurisdictions that have considered this issue are unanimous in their holdings that such a covenant creates no security interest in the property described. *See In re Friese*, 28 B.R. 953 (Bkrtcy D.Conn.1983); *The Equitable Trust Company v. Imbesi*, 287 Md. 249, 412 A.2d 96 (1980); *Weaver v. Tri City Credit Bureau*, 27 Ariz.App. 640, 557 P.2d 1072 (1976); *Tahoe National Bank v. Phillips*, 4 Cal.3d 11, 92 Cal.Rptr. 704, 480 P.2d 320 (1971).

In *Tahoe National Bank, supra,* the California Supreme Court construed a negative covenant similar to that involved here. On the basis of the agreement, the Court had no hesitation in refusing to find a lien on the property described. Pointing to the language of the agreement, the Court noted that it gave "no hint of a power of foreclosure", and that it contained "no language of hypothecation, no provisions imposing a lien or creating a mortgage, no discussion of foreclosure." 92 Cal.Rptr. at 710, 480 P.2d at 326. Instead, the Court found the substance of the document to be six covenants by the borrower, none of which purported to grant a lien on realty, but which nonetheless gave the bank "as unsecured creditor ... an assurance that [the borrower] would not encumber her assets." *Id.*

Commentators on negative covenants are in agreement that these covenants do not create a security interest. For example, 4 *American Law of Property, op. cit.,* § 16.38 states, "The purely negative covenant not to mortgage certain property while the obligation of the owner remains unpaid seems, on the authorities, pretty clearly not to create any security interest in the promise." Furthermore, Professor Gilmore states:

> Negative covenants should not ... be allowed to operate as informal or inchoate security arrangements, even against third parties with notice. If a creditor wants security, let him take a security interest in some recognized form: mortgage, pledge, an Article 9 security interest or whatnot. If he wants protection against third parties, let him take possession of the collateral or file. Nothing is to be gained by giving a shadowy effectiveness to informal arrangements which conform to no recognized pattern.

2 G. Gilmore, *Security Interests in Personal Property* § 38.4 at 1017 (1965).

To support its argument, the bank points to Mrs. Slover's testimony that she assumed the document was a second deed of trust. The bank officers testified, however, that the bank seldom uses a second mortgage or second deed of trust.

Crystal City State Bank occupied a more powerful bargaining position than the Slo-

vers and deliberately chose to use an agreement not to encumber or transfer property in standardized form. The bank cannot now be permitted to transform this agreement into a mortgage or deed of trust and thus deprive the unsecured creditors of the assets of the estate.

The unrecorded security agreement also fails to create a lien on the proceeds from the sale of the real property in favor of the bank. The security agreement specifically declares the security to be personal property. The agreement is written on a standardized form entitled Security Agreement (Consumer Goods). The collateral is described as "Home Improvement with Agreement Not to Encumber or Transfer Property." It appears under the headings of "Quantity", "Model", "Manufacturer", "Description of Goods", and "Serial or Other Identifying Number". These headings as well as most of the provisions of paragraphs 2 and 3 do not contemplate real estate as collateral. Furthermore, paragraph 5 declares that the collateral is forever to be personal property. "Borrowers agree that the Collateral is now and shall continue to be personal property notwithstanding affixation in any manner to real estate and Borrowers will not cause the collateral to become so affixed as not to be readily removed."

As in the case with the Agreement not to Encumber or Transfer Property, the bank was in the position to select the correct documentation for creating a security interest in real property. They failed to do so and, therefore, they have failed to establish anything ore than an unsecured interest in the proceeds from the sale of the real estate.

█ The Crystal City State Bank has also argued that the obligation owed by the Debtors as a result of this loan should not be discharged because money was obtained and credit was extended by means of a false statement in writing pursuant to 11 U.S.C. 523(a)(2)(B). The purported false writing is the personal loan application submitted by the Debtors as part of their request for the loan. Although the record indicates that the loan application did not describe the Kappel loan to the Debtors, and that the Debtors' earnings figures may have been inflated, the Court must conclude that the false statements were not material in the circumstances presented here. Similarly, the record does not establish that the Debtors' actions in preparing and submitting the loan application were done with the intention to defraud this creditor. The Court concludes that the Bank was looking to the collateral for the protection of its money and relied little upon the Debtors' estimated income in granting the loan. Therefore, the Debtors' obligation to the Bank will be discharged in this case.

### ORDER

Upon consideration of the record as a whole, and consistent with the Memorandum entered in these matters,

IT IS ORDERED that these proceedings be concluded; and that the request of Mae Kappel to determine that she holds a lien of a secured interest in this real property or in the proceeds of the sale of this real property be and hereby is DENIED; and that the interest of Mae Kappel is based upon not more than an unsecured debt of these Debtors; and

That the Complaint of the Crystal City Bank to establish that their claim is secured by a lien upon this real estate or upon the proceeds of the sale of this real estate be and hereby is DENIED; and

That the Complaint of the Crystal City State Bank to determine that the debt owed to it by Ronald E. Slover and Nancy J. Slover is not dischargeable be and hereby is DENIED; and that said debt is discharged in this Bankruptcy case.