**In re NATIONAL SERVICE LINES,
INC. OF NEW JERSEY d/b/a
NSL, Debtor.**

**Bankruptcy No. 86–00193(2).**

United States Bankruptcy Court,
E.D. Missouri, E.D.

Dec. 9, 1986.

Kyler Humphrey, St. Louis, Mo., for debtor.

Peter D. Kerth, Clayton, Mo., for Cass Bank & Trust Co.

Stuart J. Radloff, Clayton, Mo., for Juenger and Tonsing.

Robert J. Blackwell, St. Louis, Mo., Trustee.

Leslie A. Davis, Clayton, Mo., for trustee.

## MEMORANDUM OPINION

DAVID P. McDONALD, Bankruptcy Judge.

### FINDINGS OF FACT

(1) Jerry Juenger and Elmer Tonsing at one time were stockholders of National Service Lines, Inc. ("National"). A dispute arose between them and National resulting in state court litigation which was resolved by an agreement executed April 6, 1984, styled "Agreement and Security Agreement" (the "Agreement").

(2) Paragraph 10 of the Agreement states:

"10. *Security for Payment.* As evidence of the sums payable herein, NSL agrees to execute and to deliver four (4) separate Promissory Notes, two each to Tonsing and Juenger, one each in the principal sum of Twenty-Five Thousand Seven Hundred Fifty Dollars ($25,750.00) and one each in the principal sum of Fourteen Thousand Two Hundred Fifty Dollars ($14,250.00). Facsimilies of said Promissory Notes are attached hereto, incorporated herein and marked "Exhibit

A–1 and A–2" and "Exhibit B–1 and B–2". As security for the payment of the sums provided for herein and the Promissory Notes, Tonsing and Juenger agree to deliver, upon the execution of this Agreement Stipulation, their shares of stock in NSL, together with executed stock powers, to Donald W. Paule and Leonard D. Vines, to be held by them as joint escrow agents, pursuant to the provisions hereinbelow."

(3) Paragraph 20(q) of the Agreement states:

"(q) To further secure the indebtedness evidenced by the Promissory Notes attached as exhibits to this Agreement, NSL hereby by these presents agrees to a negative pledge of all of its accounts receivable, whether now in existence or hereinafter arising, which accounts receivable NSL warrants are free from any lien or encumbrance. Such pledge does hereby restrict NSL from granting any security interest to anyone in NSL's accounts receivable, including, but not limited to, any entity, creditor, individual, or financial institution. If said accounts receivables are pledged, in whole or in part, NSL shall be in default of this Agreement, and all rights arising out of such default shall be available to Tonsing and Juenger."

(4) On January 27, 1986, National filed its voluntary Chapter 11 Petition.

(5) On February 12, 1986, Juenger filed his Proof of Claim No. 1 in the principal sum of $15,750.00. Juenger claims that National's debt to him is secured by the pledge of stock and "negative assignment" of accounts receivable set forth in the Agreement.

(6) On February 12, 1986, Elmer Tonsing filed his Proof of Claim No. 2 in the principal sum of $15,750.00. Tonsing claims that National's debt to him is secured by the pledge of stock and "negative assignment" of accounts receivable set forth in the Agreement.

(7) On April 2, 1986, the Court entered an "Agreed Adequate Protection and Cash Collateral Order". A copy of this Order is attached hereto as an appendix and incorporated by reference herein.

(8) Juenger and Tonsing assert that paragraphs 3, 4, 6, 7, and 8 of the Court's April 2, 1986, Order show that they have a security interest in National's accounts receivable.

(9) On September 2, 1986, National's case was converted to one under Chapter 7 of the Bankruptcy Code.

(10) On October 21, 1986, the Court appointed trustee objected to Juenger and Tonsing's respective claims to have a security interest in National's accounts receivable.

(11) On December 4, 1986, the Court held a hearing on the trustee's objection, at which time all parties appeared by their respective counsel, evidence was adduced, and ruling reserved.

(12) Any of the foregoing findings of fact deemed to be conclusions of law are hereby incorporated into the conclusions of law.

CONCLUSIONS OF LAW

(1) This Court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(B), which the Court may hear and determine.

■ (2) Paragraph 10 of the Agreement does not grant either Juenger or Tonsing a security interest in National's accounts receivable.

■ (3) A pledge not to encumber assets, such as accounts receivable, commonly known as a "negative pledge" does not, of itself, create a lien on assets. *In re Slover*, 71 B.R. 9, 11–13 (Bankr. E.D.Mo.1986). Paragraph 20(q) of the Agreement obligated National not to encumber its accounts receivable. By such a negative pledge, however, National did not

grant Tonsing and Juenger a security interest in its accounts receivable.

(4) Neither Juenger nor Tonsing had a security interest in National's accounts receivable by reason of the Agreement.

■ (5) Paragraph 7 of the Court's Order of April 2, 1986, specifically left open the issue of whether Juenger and Tonsing had a lien on National's accounts receivable.

(6) The Court's Order of April 2, 1986, did not grant a security interest in National's accounts receivable to either Juenger or Tonsing.

(7) Neither Juenger nor Tonsing have a lien on National's accounts receivable.

(8) If any sums of money were paid to either Juenger or Tonsing pursuant to the Court's Order of April 2, 1986, Juenger and Tonsing should account for and turnover such sums of money to the trustee forthwith.

(9) An Order consistent with this Memorandum Opinion will be filed simultaneously therewith.

(10) Any of the foregoing conclusions of law deemed to be findings of fact are hereby incorporated into the findings of fact.

## APPENDIX

In re NATIONAL SERVICE LINES, INC., d/b/a National Service Lines of New Jersey, Debtor.

CASS BANK & TRUST CO., Movant.

April 2, 1986

AGREED ADEQUATE PROTECTION AND CASH COLLATERAL ORDER

At St. Louis, in this District, this 2nd day of April, 1986.

This matter has come before the Court on the motion of Cass Bank & Trust Co. ("Cass") seeking relief from the automatic stay and the objection of Elmer Tonsing and Jerry Juenger ("Objectors") to the grant of a lien upon the Debtor's accounts receivable to provide adequate protection. The Debtor, Cass and Objectors have appeared through their attorneys and have advised the Court that an interim agreement regarding the provision of adequate protection and use of cash collateral has been reached. Upon consideration of the provisions of the agreement and the record as a whole, it is hereby ORDERED that:

1. Cass shall retain its first perfected lien on the Debtor's pre-petition and post-petition accounts receivable solely to secure any diminution in the balances of the Debtor's three pre-petition deposit accounts with Cass from the balance of the accounts as of the date of filing of this petition.

2. Cass' rights of setoff shall be preserved pursuant to Section 553 against all of the Debtor's deposit accounts at Cass.

3. Objectors shall retain a first perfected security interest in the Debtor's pre-petition and post-petition accounts receivable to secure the repayment of the amounts owed to Objectors.

4. In the event that this case is converted or recourse to the accounts receivable is otherwise necessary, Cass and Objectors will share the proceeds of the accounts receivable on a pro rata basis.

5. As adequate protection for Cass' security interest in the Debtor's trucks and equipment, the Debtor shall keep the equipment insured and well maintained and shall make the payments under the promissory notes as they come due, with the exception of demand notes, upon which the Debtor will pay accrued interest on a monthly basis.

6. The Debtor may continue to use the proceeds of the accounts receivable and the deposit accounts in the ordinary course of its business until such time as the total funds in the deposit accounts and 80% of the accounts receivable total less than $78,167 plus the amounts owed to Objectors. In such event, Cass may freeze the deposit accounts and the Debtor must cease using Cass' and Objectors' cash collateral.

7. This interim agreed order shall remain effective until such time as the parties submit a revised agreement for the Court's approval or until such time as the

parties request and the Court conducts a hearing as to the perfection of Cass' or Objectors' liens on the respective priority thereof.

8.  The Debtor shall report to Cass and Objectors on a monthly basis the total collections and total outstanding accounts receivable in such form as may be agreed upon by the parties.