**In re ALLEGHENY INTERNATIONAL, INC., Sunbeam Corporation, Sunbeam Holdings, Inc., Almet/Lawnlite, Inc., and Chemetron Corporation, Debtors.**

Bankruptcy No. 88-448.
Motion Nos. 88-1405M, 88-1723M.

United States Bankruptcy Court,
W.D. Pennsylvania.

Oct. 26, 1988.

M. Bruce McCullough, Buchanan Ingersoll, P.C., Pittsburgh, Pa., for debtors.

Thomas M. Zwilling, Strassburger McKenna Gutnick & Potter, Pittsburgh, Pa., James Gadsden, Carter, Ledyard & Milburn, New York City, for U.S. Trust Co.

Paul A. Manion, Manion, McDonough & Lucas, P.C., Pittsburgh, Pa., Alan P. Solow, Goldberg, Kohn, Bell, Black, Rosenbloom & Moritz, Ltd., Chicago, Ill., for First Nat. Bank of Chicago.

**908**

## MEMORANDUM OPINION

**JOSEPH L. COSETTI, Chief Judge.**

Two matters are presently before the Court. The First National Bank of Chicago ("First Chicago")[1] and United States Trust Company of New York ("U.S. Trust") both have filed a Motion to Obtain Security in Accordance with Terms of Indenture. Both motions are denied.

First Chicago is the trustee under an indenture, dated February 15, 1967, pursuant to which Sunbeam Corporation ("Sunbeam") issued 5½% Sinking Fund Debentures due August 15, 1992. U.S. Trust is the successor trustee under an indenture, dated March 1, 1970, pursuant to which Allegheny Ludlum Steel Corporation, now known as Allegheny International, Inc. ("Allegheny International"), issued 9% Sinking Fund Debentures due March 1, 1995. There is presently outstanding $18,000,000 in debentures under the First Chicago Indenture and $12,899,000 in debentures under the U.S. Trust Indenture. The First Chicago Indenture provides that if Sunbeam grants a security interest in its assets, the debentures shall be secured "equally and ratably."[2] The U.S. Trust Indenture provides that if the company or certain subsidiaries mortgage their production facilities, the debentures shall be secured "equally and ratably."[3] Such language is commonly referred to as a "pari passu" clause.

On February 20, 1988, Allegheny International, Sunbeam, Sunbeam Holdings, Inc., Almet/Lawnlite, Inc., and Chemetron Corporation (collectively referred to as "the debtor") filed petitions for reorganization under chapter 11 of the Bankruptcy Code.[4] The debtor contemporaneously filed a Verified Emergency Motion to Obtain Secured Credit Under and Pursuant to 11 U.S.C. § 364 (the "motion for post-petition financing"). Shortly thereafter, the debtor's pre-petition secured lenders, a consortium of 26 banks acting through Mellon Bank (the "Mellon Group"), filed a Joint Motion for Interim Approval of Agreement to Provide Adequate Protection (the "interim motion for adequate protection").

After a hearing on February 23, 1988, the court entered an order granting the motion for post-petition financing. That order, inter alia, allowed the debtor to borrow $75 million and grant a security interest in the assets of Sunbeam to Chemical Bank and Marine Midland Bank, the debtor's post-petition lenders.[5] On that same date, the court also granted to Sunbeam, pursuant to 11 U.S.C. § 364(c)(2), a first priority perfected security interest and lien upon all of Allegheny International's unen-

---

1. First Chicago filed its motion before the debtor filed its plan of reorganization. The pending plan proposes to pay 100% of their allowed claims to the class of creditors encompassing First Chicago's bondholders. If this provision survives, First Chicago's dispute is moot.

2. Section 3.4 of the First Chicago Indenture states as follows:

   The Company covenants and agrees that it will not itself, and will not permit any Restricted Subsidiary to issue, assume, guarantee or incur any Secured Debt, without providing that the Debentures (together with, if the Company shall so determine, any other indebtedness of the Company or such Restricted Subsidiary then existing or thereafter created ranking equally with the Debentures, including guaranty of indebtedness of others) shall be secured equally and ratably with (or prior to) such Secured Debt, so long as such Secured Debt shall be so secured....

3. Section 3:5 of the U.S. Trust Indenture states as follows:

   If the Company or any Restricted Subsidiary shall mortgage as security for any indebtedness for money borrowed any steel ingot producing facility, rolling mill facility, or facility for the manufacture of steel products, products for electronic or magnetic applications or consumer products, determined to be a principal facility by the Board in its discretion, the Company will secure or will cause such Restricted Subsidiary to secure the Debentures equally and ratably with all indebtedness or obligations secured by the mortgage then being given....

4. On May 3, 1988, fourteen other subsidiaries of Allegheny International, Inc. filed petitions for reorganization under chapter 11 of the Bankruptcy Code.

5. On March 17, 1988, the court entered a permanent order approving $175 million of post-petition financing.

cumbered assets, for any money lent by Sunbeam as a post-petition lender to Allegheny International. The court also granted the interim motion for adequate protection. That order, inter alia, provided for the debtor to grant an additional blanket first priority lien on all of its assets, and the debtor to acknowledge the validity of all of the liens and security interests of the Mellon Group.

The grant of the security interest in Sunbeam to Marine Midland and Chemical Bank caused First Chicago and U.S. Trust to seek to enforce the equal and ratable clauses in their indentures. In addition, U.S. Trust contends that the adequate protection given to the Mellon Group entitles it to enforce the equal and ratable clause.[6]

Although this case is complex, and involves a significant amount of money, the instant dispute is straightforward. At best, U.S. Trust and First Chicago have unperfected security interests. They are barred from perfecting their security interests by the automatic stay, 11 U.S.C. § 362(a)(4). The debtor in possession may avoid them through 11 U.S.C. § 544.

Various parties who oppose the motions of First Chicago and U.S. Trust have argued that the equal and ratable clauses of the indentures are negative pledge clauses, which are "merely ... agreement[s] to forbear from taking some manner of action." *In re Continental Resources Corp.,* 43 B.R. 658 (Bankr.W.D.Or.1984), *aff'd Continental Illinois National Bank v. FDIC,* 799 F.2d 622 (10th Cir.1986). A negative pledge does not create a security interest. *Crystal City State Bank v. Goldstein (In re Slover),* 71 B.R. 9 (Bankr.E.D.Mo.1986); *In re National Service Lines of New Jersey,* 69 B.R. 189 (Bankr.E.D.Mo.1986). In the instant case, First Chicago and U.S. Trust argue that the equal and ratable clause is more than a negative pledge. The clause imposes the affirmative duty to

grant an equal and ratable security interest to First Chicago and U.S. Trust. Although "[a] purely negative covenant against encumbrances does not create an equitable lien (citations omitted) ... a straight affirmative covenant to secure when other indebtedness is secured creates an equitable lien." Coogan, Kruple, and Weiss, *The Outer Fringes of Article 9: Subordination Agreements, Security Interests in Money and Deposits, Negative Pledge Clauses, and Participation Agreements,* 79 Harv.L.Rev. 229, 264 n. 1 (1965). Nevertheless, as the Mellon Group properly argues, this is a distinction without a difference. Whatever lien First Chicago and U.S. Trust have is unperfected, and cannot be perfected because of the automatic stay. Section 362(a)(4) of the Bankruptcy Code, 11 U.S.C. § 362(a)(4), proscribes "any act to create, perfect, or enforce any lien against property of the estate...." As the leading commentators have noted, "[t]he advantage of early filing of a financing statement with respect to the affirmative aspect of a negative pledge needs no further demonstration." Coogan, Kruple, and Weiss, *supra,* at 265.

What becomes of the interest of First Chicago and U.S. Trust? Section 544 of the Bankruptcy Code, 11 U.S.C. § 544, provides as follows:

> The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
>
> (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial

6. Various unsecured creditors of the debtor strenuously objected to the adequate protection given to the Mellon Group. On March 10, 1988, the court conducted a de novo hearing on the permanent motion for adequate protection. At that hearing, it became clear to the court that the need for adequate protection had been exag-

gerated by the Mellon Group. Consequently, the court vacated the interim order for adequate protection. However, the court did continue that portion of the interim adequate protection order which allowed the debtor to acknowledge the validity of the pre-petition security interest of the Mellon Group.

lien, whether or not such a creditor exists.

Simply stated, the trustee, or debtor in possession, has the powers of a judicial lien creditor as of the date the bankruptcy petition is filed, including the right to avoid any liens that are unperfected as of the filing date. Since unperfected liens are avoidable, then the interest of First Chicago and U.S. Trust must also be avoidable. First Chicago claims "that there is no reason why the affirmative grant ... should not be enforced in a bankruptcy context," but has failed to present any authority for doing so.

For the above reasons, First Chicago's argument that it has an interest in property which is entitled to adequate protection, pursuant to 11 U.S.C. § 363, must fail. First Chicago argues that the post-petition security interest given to the post-petition lenders created a lien which constitutes an interest in property which is entitled to adequate protection. The adequate protection which it seeks is a lien in the Sunbeam property. This is a circular argument. Since the alleged lien is voidable, First Chicago lacks an interest in property entitled to adequate protection.

First Chicago also argues that 11 U.S.C. § 546(b) limits the avoiding powers of the debtor in possession in the instant case. That section states, in pertinent part, that "[t]he rights and powers of a trustee under sections 544, 545 and 549 ... are subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection...." The legislative history further describes the limitation of the trustee's powers: "The rights granted to a creditor under this subsection prevail over the trustee only if the transferee has perfected the transfer in accordance with applicable law and that perfection relates back to a date that is before the commencement of the case." H.R. No. 95-595, 95th Cong., 1st Sess. (1977) 371, *reprinted in* 1978 U.S.Code Cong. & Admin. News at 6327. In the instant case, First Chicago has not shown how it had the right to perfect its lien and have the lien relate back to before the petition was filed. Some of the beneficiaries of this provision of the Code are mechanics lienholders, who have additional time to perfect under state law, *see, e.g.* 49 Pa.Stat. Ann. § 1502 (Purdon 1965), and sellers of goods seeking reclamation, who have ten days to reclaim after insolvency. *See, e.g.* 13 Pa.Cons.Stat. Ann. § 2702 (Purdon 1984). This is not such a situation.

Neither First Chicago nor U.S. Trust argue that the indenture constitutes an executory contract which the debtor must assume or reject. In fact, U.S. Trust specifically contends that the equal and ratable clause in its indenture constitutes a contract, but it is not an executory contract subject to rejection.

In *Official Committee of Unsecured Creditors v. Mellon Bank,* 93 B.R. 907 Adversary No. 88-186, which is pending before this court, the unsecured creditors have alleged that the Mellon Group improved its position pre-petition by, inter alia, obtaining additional collateral. If that were the case, U.S. Trust should have enforced the equal and ratable clause at that time. However, if the unsecured creditors prevail against the Mellon Group, the Mellon Group's improved position will be subordinated and the need for U.S. Trust to enforce the equal and ratable clause will be obviated.