**In re ALLEGHENY INTERNATIONAL, INC., Sunbeam Corporation, Sunbeam Holdings, Inc., Almet/Lawnlite, Inc., and Chemetron Corporation, et al., Debtors.**

**Bankruptcy No. 88–00448.**
**Motion No. 88–7341M.**

United States Bankruptcy Court,
W.D. Pennsylvania.

May 18, 1989.

See also, Bkrtcy., 100 B.R. 244.

David M. Freidman, Gordon Hurwitz Butowsky Weitzen Shalov & Wein, New York City, for Fidata Trust Co. New York.

M. Bruce McCullough, Buchanan Ingersoll, P.C., Pittsburgh, Pa., for the debtors.

David T. Sykes, Duane, Morris and Heckscher, Philadelphia, Pa., for AI Investments, L.P.

## MEMORANDUM OPINION

JOSEPH L. COSETTI, Bankruptcy Judge.

This matter comes before the court by the objection of Allegheny International, Inc. ("AI" or the "debtor") to the claim of Fidata Trust Company New York ("Fidata"). Fidata has filed a proof of claim for $121,222,412. The claim is allowed in the amount of $111,479,047.

The instant matter is a core proceeding, pursuant to 28 U.S.C. § 157(b)(2)(B). This

court has jurisdiction over the parties and subject matter of this action under 28 U.S. C. § 1334.

## I. FACTS

To finance its acquisition of Chemetron Corp., the debtor issued 5,466,093 shares of $2.19 cumulative preference stock (the "preference stock") in 1977. By a prospectus dated May 31, 1984, the debtor offered to exchange (the "exchange offer") one subordinated sinking fund debenture due July 1, 2002 (the "10.4% debentures") for each share of preference stock. The exchange offer was to expire on June 2, 1984. However, by a supplemental prospectus dated June 25, 1984, the debtor extended the exchange offer to July 13, 1984 and increased the interest rate from 10% to 10.4%. Fidata is the indenture trustee for the 10.4% debentures, by a trust indenture dated May 31, 1984 and supplemented as of June 25, 1984 (the "indenture").[1]

The prospectus anticipated that the issuance of the 10.4% debentures would create original issue discount.

It is anticipated that the issuance of the Debentures will result in the creation of original issue discount equal to the difference between the stated redemption price at maturity of a Debenture ($25.00) and the Debenture's issue price. For this purpose, assuming as anticipated, that the Debentures are listed and traded on the NYSE, the "issue price" of the Debentures will equal the first price at which such Debentures trade on the NYSE following their issuance.

Supplemental Objections to Amended Claim of Fidata Trust Company New York on Behalf of Holders of Subordinated Debentures and Reply of Allegheny International, Inc. and Accompanying Memorandum of Law to Response of Indenture Trustee Under Subordinated Debentures to the Debtors' Objection to the Indenture Trustee's Proof of claim (the "Supplemental Objections"), Exhibit A (Prospectus), p. 7.[2]

---

1. At the time of the exchange offer, Fidata was known as Bradford Trust Company.

2. AI and Fidata have stipulated to the admissibility of the exhibits attached to the Response of Indenture Trustee Under AI Subordinated De-

However, each 10.4% debenture bore the following inscription: "INFORMATION REGARDING ORIGINAL ISSUE DISCOUNT: The issue date of this debenture is June 22, 1984 and its issue price is $15.81." Supplemental Objections, Exhibit B (10.4% Subordinated Sinking Fund Debenture). The issue price, $15.81, represented the mean of the high and low selling price of the preference stock on June 22, 1984.[3] Accordingly, a $100 debenture had an issue price of $63.24 and an annual yield of 17.06%. The original issue discount was $36.76 per $100 debenture.

Fidata filed a proof of claim for $39,211,-348 on behalf of the holders of the 10.4% debentures.[4] Fidata's proof of claim for the 10.4% debentures allocates $38,664,037 to principal and $547,311 to accrued interest.[5] The debtor asserts that $13,516,910 of Fidata's claim consists of unamortized original issue discount. The debtor contends that the unamortized original issue discount should be disallowed as unmatured interest pursuant to section 502(b) of the Bankruptcy Code, 11 U.S.C. § 502(b).

Fidata raises several arguments in defense of its proof of claim. First, Fidata asserts that certain and plain language of the 10.4% debentures entitles it to the face value of those debentures, notwithstanding bankruptcy or other events of default. Second, Fidata contends that section 502(b) is inapplicable to the instant dispute. Third, Fidata argues that if the court finds original issue discount, such original issue discount cannot exceed AI's original basis in the preference stock, or should be determined from the trading price of the preference stock on the last full trading day before the announcement of the exchange offer. Finally, Fidata argues that the debt-

or incorrectly calculated the accretion of pre-petition interest. We will address these issues seriatim.[6]

## II. APPLICABILITY OF ORIGINAL INTEREST DISCOUNT

Section 502(b) of the Bankruptcy Code, 11 U.S.C. § 502(b) provides that a claim shall be allowed "except to the extent that ... (2) such claim is for unmatured interest." To the extent that the original issue discount is unmatured interest, Fidata's claim must be disallowed. However, Fidata contends that certain language in the indenture entitles Fidata to the full amount of its claim, notwithstanding bankruptcy. Section 504 of the indenture provides, in pertinent part, as follows:

> In case of the pendency of any ... insolvency, liquidation, bankruptcy, reorganization ... or other judicial proceeding relative to the Company or any other obligor upon the Debentures ... the Trustee (irrespective of whether the principal of the Debentures shall then be due and payable as therein expressed or by declaration of acceleration or otherwise ...) shall be entitled and empowered, by intervention in such proceeding or otherwise: (i) to file and prove a claim for the whole amount of principal and interest owing and unpaid in respect of the Debentures ... in such judicial proceeding.

Response of Indenture Trustee, Exhibit D (Indenture). Sections 502 and 503 of the indenture accelerate unpaid principal and interest on the debentures upon bankruptcy (or other event of default).

 Notwithstanding the proscription of unmatured interest as an allowable claim, Fidata asserts that we must allow its

---

bentures to the Debtors' Objection to the Indenture Trustee's Proof of Claim (the "Response of Indenture Trustee"), the Supplemental Objections, and the Reply of Indenture Trustee Under AI Subordinated Debentures to the Debtors' Supplemental Objections to Its Amended Claim. Transcript of March 14, 1989 hearing, at page 70.

3. The reported closing sales price of the preference stock on the New York Stock Exchange Composite Transactions was $15.50 per share on that date.

4. Fidata is the indenture trustee for other AI debentures. Fidata's aggregate proof of claim includes claims on behalf of the holders of those other AI debentures.

5. AI does not dispute the amount of accrued interest asserted by Fidata.

6. Fidata also asserts that the debtor failed to meet its burden for disallowing the claim. In light of the instant proceedings, that argument is moot.

claim in full. In effect, Fidata argues that because of a clause in the indenture, it may act as though the debtor was not in bankruptcy. We find such a position without merit. Fidata's argument is anomalous; it is beyond dispute that bankruptcy affects the relationship between a debtor and its creditors. *Cf. In re Allegheny International Inc.*, 93 B.R. 907 (Bankr.W.D.Pa. 1988) (equal and ratable clause in indenture rendered inoperative by bankruptcy). Moreover, the clear legislative history to section 502(b)(2) declares that determination of the maturity of interest shall be made "without reference to any ipso facto or bankruptcy clause in the agreement creating the claim." H.R.Rep. No. 595, 95th Cong. 2d Sess. 352, *reprinted in* 1978 U.S. Code Cong. & Ad.News 5787, 5963, 6308. Therefore the actual language of the indenture does not support Fidata's arguments. We hold that original issue discount is unmatured interest, as that term is used in section 502(b)(2).

The legislative history of section 502(b)(2) describes unmatured interest as "postpetition interest that is not yet due and payable, and any portion of prepaid interest that represents an original discounting of the claim, yet that would not have been earned on the date of bankruptcy." H.R.Rep. No. 595, 95th Cong. 2d Sess. 352–53, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5963, 6308–09. The legislative history then gives an illustration:

> For example, a claim on a $1,000 note issued the day before bankruptcy would only be allowed to the extent of the cash actually advanced. If the original discount was 10% so that the cash advance was only $900, then notwithstanding the face amount of the note, only $900 would be allowed. If $900 was advanced under the note some time before bankruptcy, the interest component of the note would have to be pro-rated and disallowed to the extent it was for interest after the commencement of the case.

*Id.* The facts of the instant case fit squarely within the example contained in the legislative history. The legislative history is clear; original issue discount is un-

matured interest which is disallowed under 11 U.S.C. § 502(b)(2).

Fidata next argues that section 502(b)(2) does not apply to publicly traded debt nor to debentures created in the context of an exchange offer. There is no suggestion of Fidata's position within the statute or the legislative history. Nevertheless, Fidata relies on *In re Radio–Keith–Orpheum Corp.*, 106 F.2d 22 (2d Cir.1939), *cert. denied*, 308 U.S. 622, 60 S.Ct. 377, 84 L.Ed. 519 (1939), *reh'g denied*, 309 U.S. 694, 60 S.Ct. 512, 84 L.Ed. 1035 (1940), to support this argument. That case involved several appeals from the confirmation of a plan of reorganization under section 77B of the former Bankruptcy Act of 1898. One of the appeals complained of the treatment of certain debenture holders. Those debentures had been issued in an offering to stockholders in which "for $100 a stockholder would get a $100 debenture and 15 shares of common stock, and of the $100 paid in $55 would be allocated to the debenture and $45 to the stock." 106 F.2d at 27. Simply stated, the debentures were issued at a $45 discount.

The plan of reorganization in *In re Radio–Keith–Orpheum* "treat[ed] the debentures as valid claims for full face amount." *Id.* The court of appeals held that such treatment did not affect the confirmability of the plan:

> The debentures, it is true, were issued at a heavy discount. But we are referred to no provision of law forbidding the issuance of bonds by corporations at a discount, and the general rule is that corporations may borrow at a discount (citations omitted). In this case the offer of debentures at the discount complained of was made to the debtor's stockholders. We see no reason to doubt the validity of the debentures for full face value.

*Id.* However, the court of appeals did not hold that allowance of a claim for the face value of the debentures was mandatory. Rather, the court held that such treatment was permissible over the protest of one stockholder in an otherwise consensual plan. In light of both the clear language

of the statute and the supporting legislative history of section 502(b)(2), we doubt the vitality and do not rely upon *In re Radio-Keith-Orpheum.*

Fidata also asserts that section 502(b)(2) does not limit the claim for the 10.4% debentures, because they were publicly traded debt instruments. Fidata suggests that the use of the term "note" within the example in the legislative history limits the applicability of section 502(b)(2) to notes. However, the discussion of notes is only provided as an "example," and thus inherently is not limiting. Fidata has not provided any other authority for this conclusion. We find this argument implausible and wholly unconvincing.

Fidata next argues that when a share of preferred stock is exchanged for a bond of the same face value, and no other value is given, unmatured interest is absent because economic original issue discount is lacking. In support of this argument, Fidata relies on a case interpreting the Internal Revenue Code.

Both Fidata and AI cite tax authorities to support their respective positions. Original issue discount issues are common to tax jurisprudence. Our research has failed to discover any bankruptcy precedent under the Bankruptcy Code and only *In re Radio-Keith Orpheum* under the former Bankruptcy Act. Because of the more frequent use of the term "original issue discount" in tax jurisprudence, it is appropriate to comment on the applicability of tax law to the instant dispute. Our task is to fix Fidata's claim using the Bankruptcy Code, for the purposes of voting on, and receiving distribution under, a plan of reorganization. In this connection, we find tax law instructive, but not controlling for this purpose. With this proviso, we review the tax authorities.

Fidata cites *Commissioner of Internal Revenue v. National Alfalfa Dehydrating and Milling Co.*, 417 U.S. 134, 94 S.Ct. 2129, 40 L.Ed.2d 717 (1974) for the proposition that original issue discount should not be recognized when debentures are exchanged for preferred shares. In that case, the taxpayer recapitalized by issuing debentures with a face value of $50 in exchange for outstanding unlisted $50 par value 5% cumulative preferred shares. At the time of the exchange, the stock was quoted over-the-counter at $33 per share. The taxpayer attempted to deduct as interest the difference between the face value of the debentures and the quoted price of the stock, but was rebuffed by the Internal Revenue Service and the Tax Court of the United States. The court of appeals reversed the tax court, but the Supreme Court reversed the court of appeals and held that "the taxpayer did not incur amortizable bond discount upon the issuance of its $50 face value ... debentures in exchange for its outstanding $50 par cumulative preferred stock," *Id.* 94 S.Ct. at 2140, even though the price of the preferred stock was $33 at the time of the exchange. The Court focused on "whether the issuer-taxpayer has incurred, as a result of the transaction, some cost or expense of acquiring the use of capital." *Id.* at 2136.

Subsequent cases have rejected the proposition that *National Alfalfa* precludes original issue discount. In *Cities Service Company v. United States*, 522 F.2d 1281 (2d Cir.1974), *cert. denied*, 423 U.S. 827, 96 S.Ct. 43, 46 L.Ed.2d 43 (1975), the taxpayer exchanged debentures for its outstanding preferred stock, and then claimed a tax refund. The taxpayer asserted that it had issued the debentures at a discount because "it received less in value for the debentures than their face amount when they were issued ... in exchange for its outstanding preferred and preference stock." *Id.* at 1284. After it was unable to obtain a favorable response from the Internal Revenue Service, Cities Service brought an action in the district court to obtain a refund. The district court held that the exchange of debentures for preferred shares created original issue discount.

The court of appeals affirmed the district court on the issue of original issue discount.[7] In doing so, the court of appeals

---

7. The court of appeals disagreed with the dis-　trict court's determination of the amount of

distinguished the case before it from *National Alfalfa:*

> The face amount of Cities' debentures far exceeds both the stated value of the preferred and the original consideration paid in at the time of issuance. In order to retain the use of capital represented by its preferred and preference stock, Cities incurred an additional cost (footnote omitted) through replacement of an uncertain (or perhaps non-existent) obligation, i.e. the stated value of the preferred, with a fixed one *of greater amount,* i.e. the face amount of the debentures.

*Cities Service,* 522 F.2d at 1288. The court of appeals further observed that such was not the case in *National Alfalfa:* "[W]here the original consideration equals the face amount of the debentures, no discount can arise since the issue price equals their face amount." 522 F.2d at 1288.

In *Gulf, Mobile & Ohio Railroad Co. v. United States,* 579 F.2d 892 (1978), another case interpreting the Internal Revenue Code, the taxpayer exchanged debentures for preferred stock. The exchange was voluntary and "[o]ne income debenture in principal amount of $100 was to be traded for one share of preferred stock with a stated value of $100." *Id.* at 893. The taxpayer sought a tax refund "based on a deduction for the amortizable bond discount arising from the exchange of the debentures for the preferred stock ... computed by subtracting the total market value of the preferred stock ... during the exchange period (footnote omitted) from the total principal amount of the debentures...." *Id.* at 894–95. The court of appeals "refuse[d] to read *National Alfalfa* as establishing an absolute ban on discount when a corporation exchanges its bonds for its own preferred stock." 579 F.2d at 896. The court noted three distinctions from *National Alfalfa:* "First, as in *Cities Service,* the original value received

... for each preferred share was less than the face amount of the debentures." 579 F.2d at 897. Second, the debentures in *Gulf, Mobile,* unlike the preferred shares for which they were exchanged, were subject to a sinking fund. Third, "and perhaps most importantly," the court of appeals distinguished *National Alfalfa* "because the exchange of debentures for preferred stock was completely voluntary and was affected by market forces." 579 F.2d at 899. Such was not the case in *National Alfalfa,* where "an amendment to the articles of incorporation required the preferred shareholders to exchange their shares for debentures or else have 'all rights and privileges' cease." 579 F.2d at 899.

To the extent that the preceding tax authorities are applicable, we conclude that the case at bar is distinguishable from *National Alfalfa.* As in *Cities Service* and *Gulf, Mobile* the face amount of the 10.4% debentures, $25.00, exceeded the original consideration paid for the preference stock, $22.03, even though the face amount of the debentures equaled the stated value of the preference stock. Moreover, the exchange offer was voluntary and subject to market forces, which the court in *Gulf, Mobile* considered to be the critical factor in determining the applicability of original issue discount.[8] In this case, the exchange offer was voluntary. Therefore, to the extent that tax law is applicable to this dispute, we conclude, through an analysis of such law, that the exchange offer would have resulted in original issue discount.

### III. AMOUNT OF ORIGINAL ISSUE DISCOUNT

For the purpose of calculating the original issue discount, AI fixed the issue price of the 10.4% debentures at $15.81, as indicated on each debenture. That amount represented the mean trading price of the preference stock on the last effective date

original issue discount, and remanded for further proceedings on that matter.

**8.** Unlike the preferred stock in *Gulf, Mobile,* the preference stock in the instant case was subject to a sinking fund. We do not think, however, that this is dispositive. Moreover, the debtor

points out that if it missed a payment from the sinking fund for the preference stock, such payment merely accumulated. If, however, the debtor missed a payment from the sinking fund for the debentures, such missed payment constituted an event of default.

of the exchange offer before the extension. Therefore, a $100 10.4% debenture had an issue price of $63.24. Fidata strenuously differs and argues that the debtor's computation of original issue discount is incorrect. Fidata asserts that the basis of the 10.4% debentures should be the original basis of the preference stock, $22.03, or $88.12 per $100 debenture. Alternatively, Fidata argues that the basis of the 10.4% debentures equals the trading price of the preference stock on the last full trading day prior to the announcement of the exchange offer, $20.75, or $83 per $100 debenture.

The prospectus recited that original issue discount would be calculated based on the first trading price of the 10.4% debentures on the New York Stock Exchange following their issuance. With respect to original issue discount, the prospectus was consistent with the Internal Revenue Code and Treasury Regulations existing at the time of the exchange offer. Section 1232(b)(1) of the Internal Revenue Code provided that the issue price of a bond which was issued for property shall be the fair market value of such property, if the bonds or the stock or securities for which they were issued were traded on an established securities market. The concomitant Treasury Regulations further define "issue price":

> [T]he fair market value of property for which an obligation or investment unit is issued shall be deemed to be the same as the fair market value of such obligation or investment unit, determined by reference to the fair market value of that portion of the issue, of which such obligation or unit is a part, which is traded on an established securities market. The fair market value of such obligation ... shall be determined as of the first date after the date of issue ... that such obligation is traded on an established securities market.

9. The record does not indicate why the debentures did not trade earlier.

10. A copy of a 10.4% debenture, appended to the Supplemental Objections as Exhibit B, reflects June 22, 1984 as the issue date. However, the debentures and the prospectus recited that interest would begin to accrue on July 1, 1984,

Treasury Regulation § 1.1232–3(b)(2)(iii)(c) (1984). The Treasury Regulations further provided that an obligation is considered as "traded on an established securities market" if such obligation "is so traded on or within 10 'trading' days after the day it is issued." Treasury Regulation § 1.1232–3(b)(2)(iii)(b) (1984). If such obligation is not traded on an established market within 10 trading days after it was issued, but the property for which the obligation was issued was so traded, then the issue price of the obligation equals the fair market value of the property for which it was traded on the issue date of the obligation. Treasury Regulation § 1.1232–3(b)(2)(iii)(c) (1984).

In the instant case, the 10.4% debentures first traded on the New York Stock Exchange on August 3, 1984. Supplemental Objection, Exhibit H.[9] Under the applicable Treasury Regulations, the 10.4% debentures would not be considered as "traded on an established securities market," because the debentures first traded more than ten days after their issue date. Treas.Reg. § 1.1232–3(b)(2)(iii)(b).[10] Thus, under a tax analysis, they could not be valued according to their first trading price on the New York Stock Exchange. Rather, the 10.4% debentures would be valued according to the fair market value of the preference stock on the issue date of the 10.4% debentures. We reemphasize, however, that the Internal Revenue Code and Treasury Regulations are instructive, but not controlling for our purpose. Our task is to value Fidata's claim—not to determine the tax consequences of the exchange offer. In this connection, the court finds that the closing price of the 10.4% debentures on their first day of trading, $65, is the best evidence of the original issue discount. That price represents the actual market value of the 10.4% debentures as of the

and the parties appear to treat July 1, 1984 as the issue date. For the purposes of clarity and to aid the calculation of original issue discount, we will treat July 1, 1984 as the issue date. Even so, the debentures did not trade on an established securities market within ten days of their issuance.

first opportunity the market had to evaluate them. Moreover, the prospectus warned that such a method for determining original issue discount should be anticipated, albeit in a tax sense. The court also notes that on the first day the 10.4% debentures were traded, the market price of four shares of the $2.19 preference stock equaled the market price of four $25 debentures. Supplemental Objections, Exhibit H.

We find no compelling reason to adopt Fidata's position that the fair market value of the preference stock on the day before the exchange offer was announced determines the price of the 10.4% debentures. Holders were not compelled to exchange their preference stock; some continued to hold the preference stock. We similarly find AI's position that the 10.4% debentures should be valued according to the fair market value of the preference stock on the last day of the exchange offer unconvincing. The prospectus anticipated another date.

Fidata argues alternatively that the value AI received when it originally issued the preference stock, $22.03 per share, should be the basis for valuing the 10.4% debentures. A similar argument was flatly rejected in *Cities Service:*

> Since the market value of the debentures at the time of the exchange is the issue to be determined, rather than the value received by Cities on the exchange, we also reject Cities' contention that the original consideration paid in upon issuance of the preferred ... is the figure to be used in determining debt discount.

522 F.2d at 1290, n. 15. Although *Cities Service* decided an issue of tax law, we find that court's reasoning equally applicable to the instant case.

## IV. ACCRETION OF ORIGINAL ISSUE DISCOUNT

■ AI argues that the original issue discount should be determined on a weighted basis, pursuant to the Treasury Regulations. However, the legislative history of section 502(b)(2) of the Bankruptcy Code provides that unmatured interest should be "pro-rated" and disallowed to the extent it was for interest after the commencement of the case. Fidata argues that the use of the term "pro-rated" with respect to unmatured interest indicates that the interest should accrete on a straight-line basis. We find merit in Fidata's position on this issue. Webster's New Collegiate Dictionary 924 (1975) defines "prorate" as "to divide, distribute or assess proportionately." Thus, based on the plain language of the legislative history, the original issue discount should be determined on a straight-line basis. We now turn to the actual calculation of the accretion of the original issue discount.

The 10.4% debentures were subject to a mandatory sinking fund provision, which required AI to redeem ten percent (10%) of the 10.4% debentures annually, starting on July 1, 1993. *See* Supplemental Objections, Exhibit B. Therefore, the average maturity date was July 1, 1997; and the average terms of the 10.4% debentures was 156 months.[11] Because 43.66 months [12] elapsed between July 1, 1984 and the filing date, February 20, 1988, the accretion of the original issue discount is calculated by multiplying 43.66/156 (= 28%) by the amount of the discount. Therefore, $9.80 of origi-

---

11. The average term of the 10.4% debentures is calculated as follows:

| | Months |
|---|---|
| 1984 | 6 |
| 1985 through 1996 (12 yrs. × 12 mos.) | 144 |
| 1997 (to July 1) | 6 |
| Total months 10.4% debentures outstanding to average maturity date | 156 |

12. The number of months the debentures were outstanding until the filing date is calculated as follows:

| | Months |
|---|---|
| 1984 (from July 1) | 6 |
| 1985 | 12 |
| 1986 | 12 |
| 1987 | 12 |
| 1988 (to February 20) | 1.66 |
| Total months 10.4% debentures outstanding to filing of petition | 43.66 |

nal issue discount had accrued per $100 debenture.

## V. SUMMARY

We conclude that original issue discount is unmatured interest, as that term is used in 11 U.S.C. § 502(b)(2). Therefore, original issue discount is not an allowable claim. Based on the facts of this case, we hold that the exchange offer resulted in original issue discount.

In summary, Fidata's claim is reduced by the amount of original issue discount. Such original issue discount is $35.00, which equals the face value of a $100 debenture, less the selling price of the 10.4% debentures on the first day which they were traded, $65. Such original issue discount shall be computed on a straight-line basis, using July 1, 1997 as the average maturity of the 10.4% debentures, from July 1, 1984, to the filing date of the bankruptcy, February 20, 1988. Fidata's claim for the 10.4% debentures is allowed for $29,467,983; Fidata's aggregate claim is allowed for $111,479,047.

This opinion constitutes findings of fact and conclusions of law.

## APPENDIX

Accrued Discount Computation Based on $16.25 Issue Price Per $25.00 Face Amount Debentures

| | | |
|---|---|---|
| $ | 16.25 | "Issue price" per $25 face amount 10.4% debenture |
| × | 40 | |
| $ | 650 | "Issue price" per $1000 face amount 10.4% debenture |
| $ | 1,000 | Face amount 10.4% debenture |
| − | 650 | Discount per $1000 face amount 10.4% debenture |
| $ | 350 | Discount per $1000 face amount 10.4% debenture |
| × | 28% | Percentage of discount accrued to filing of petition |
| $ | 98 | Accrued discount per $1000 face amount 10.4% debenture |
| × | 38,664 | Units of $1000 face amount 10.4% debentures |
| $ | 3,789,072 | Aggregate accrued discount at filing of petition |
| $ | 25,131,600 | Aggregate "issue price" 10.4% debentures* |
| $ | 28,920,672 | Aggregate "issue price" plus accrued discount 10.4% debentures at filing of petition |
| + | 547,311 | Accrued but unpaid <u>stated</u> interest |
| $ | 29,467,983 | Total claim for 10.4% debentures |
| *$ | 650 | "Issue price" per $1000 face amount 10.4% debentures |
| × | 38,664 | Units of $1000 face amount 10.4% debentures |
| $ | 25,131,600 | Aggregate "Issue price" 10.4% debentures |