**In re CHATEAUGAY CORPORATION, Reomar, Inc., The LTV Corporation, et al., Debtors.**

**Bankruptcy Nos. 86 B 11270 (BRL), 86 B 11334 (BRL), 86 B 11402 (BRL) and 86 B 11464 (BRL).**

United States Bankruptcy Court,
S.D. New York.

Jan. 11, 1990.

Levin & Weintraub & Crames by Arlene R. Alves, and Davis Polk & Wardwell, by Karen E. Wagner, Maryellen E. Abely, New York City, for debtors.

Stroock & Stroock & Lavan by Lawrence Handelsman, Mark Speiser, New York City, for Steel Creditors Committee.

Blank, Rome, Comisky & McCauley by Thomas E. Biron, Philadelphia, Pa., for Parent Committee.

Rosenman & Colin by Paul L. Bindler, New York City, for IBJ Schroder Bank & Trust Co.

Haynes and Boone by Robin E. Phelan, Dallas, Tex., for BancTexas–Dallas.

Walker & Walker, P.C. by John A. Walker, Jr., Knoxville, Tenn., for Valley Fidelity Bank & Trust Co.

Day, Berry & Howard by James J. Tancredi, Hartford, Conn., for The Connecticut Bank & Trust Co., N.A.

Hahn Loeser & Parks by Lawrence E. Oscar, Cleveland, Ohio, for The Huntington Nat. Bank.

Shipman & Goodwin by Alan E. Lieberman, Hartford, Conn., for The Connecticut National Bank.

Sullivan & Cromwell, by Mark Van Dyke Holmes, New York City, for San Paolo Bank.

Winthrop, Stimson, Putman & Roberts by Ted A. Berkowitz, New York City, for First Fidelity Bank, Nat. Ass'n, New Jersey.

## MEMORANDUM DECISION ON MOTION FOR PARTIAL SUMMARY JUDGMENT ON OBJECTION TO CLAIMS

BURTON R. LIFLAND, Chief Judge.

### BACKGROUND

On July 17, 1986 (the "Filing Date") and thereafter, the LTV Corporation and sixty-six of its subsidiaries, (collectively, the "Debtors"), filed for reorganization under Chapter 11 of the Bankruptcy Code (the "Code") and were continued in the management, operation and possession of their businesses and properties as debtors-in-possession pursuant to §§ 1107 and 1108 of the Code. These cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Orders of this Court.

Under 28 U.S.C. §§ 157 and 1334 and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York (Ward, Acting C.J.) dated July 10, 1984, this Court has jurisdiction over the Debtor's objection to two proofs of claim filed by Valley Fidelity Bank and Trust Company, as Trustee ("Valley Fidelity"). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

It has been stated in the LTV Corporation Statement of Undisputed Facts Pursuant to Local Bankruptcy Rule 13(h) ("LTV's 13(h) Statement") and admitted in Valley Fidelity's Statement of Disputed Facts ("Valley's 13(h) Statement") that as of December 1, 1982, LTV had issued a total face amount of $150,000,000 of 13⅞% Sinking Fund Debentures due December 1, 2002 ("Old Debentures"), $125,000,000 to the public and $25,000,000 to certain subsidiary pension funds. LTV received $110,835,000 in cash (before issuance expenses) for the bonds issued to the public. The remaining bonds were issued in lieu of cash contributions of $22,167,000 to certain subsidiary pension funds. The total proceeds received were valued at $133,002,000. (LTV's 13(h) Statement at ¶¶ 2 and 3, and Valley's 13(h) Statement at ¶¶ 2 and 3).

In an offering circular dated May 1, 1986 and a supplement dated May 15, 1986, LTV offered to exchange $1,000 face amount of LTV 15% Senior Notes due January 15, 2000 ("New Notes") and 15 shares of LTV Common Stock for each $1,000 principal amount of Old Debentures tendered for exchange. Pursuant to the exchange offer, as of June 1, 1986, $116,035,000 face amount of Old Debentures were exchanged for New Notes and LTV Common Stock. The New Notes were issued in a face amount of $116,035,000. Valley Fidelity Bank & Trust Company is the current trustee for both the Old Debentures and

the New Notes. (LTV's 13(h) Statement at ¶¶ 2 and 5, and Valley's 13(h) Statement at ¶¶ 2 and 5).

Valley Fidelity filed proof of claim No. 20,069 on behalf of holders of the Old Debentures on November 27, 1987. On the same date, Valley Fidelity also filed proof of claim No. 20,067 on behalf of holders of the New Notes. (LTV's 13(h)) Statement at ¶¶ 9 and 10, and Valley's 13(h) Statement at ¶¶ 9 and 10).

The Connecticut National Bank, The Connecticut Bank & Trust Company, N.A., IBJ Schroder Bank & Trust Company, Huntington National Bank, Maryland National Bank and BancTexas Dallas, N.A., were permitted by Stipulation and Order dated October 31, 1989 to intervene in this action for the purpose of addressing questions of law raised by LTV's Motion.

### RELIEF REQUESTED

LTV's Motion for Partial Summary Judgment seeks an Order disallowing unamortized original issue discount on the Valley Fidelity claims as unmatured interest that is not allowable pursuant to § 502(b)(2) of the Code.

### ISSUES

1. Whether Valley Fidelity is the proper party in interest in this action.

2. Whether a claim for unamortized original issue discount shall be allowed pursuant to § 502(b)(2) of the Code.

3. The way in which unamortized original issue discount should be calculated.

4. The amount of unamortized original issue discount on the two claims of Valley Fidelity that are the subject of LTV's motion.

### DISCUSSION

### SUMMARY JUDGMENT

■ Pursuant to Rule 56 of the Federal Rules of Civil Procedure (the "Federal Rules"), made applicable herein pursuant to Bankruptcy Rule (the "Rules") 7056, summary judgment must be granted where "there is no genuine issue as to any materi-

al fact and ... the moving party is entitled to a judgment as a matter of law." Federal Rule 56(c). "Summary judgement ... is an extraordinary remedy which should be granted with great caution...." *In re Overmyer,* 52 B.R. 111, 114 (Bankr.S.D.N.Y.) *motion to amend denied,* 53 B.R. 952 (S.D. N.Y.1985); *Katz v. Goodyear Tire and Rubber Co.,* 737 F.2d 238, 244 (2d Cir.1984). Summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Summary judgment is appropriate where the movant demonstrates that there are no genuine issues of material fact to be tried. *In re O.P.M. Leasing Services, Inc.,* 46 B.R. 661, 655 (Bankr.S.D.N.Y.1985). Thus, "only dispute over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Ambiguities must be resolved and all reasonable inferences must be drawn in favor of the party against whom summary judgment is sought. *Knight v. U.S. Fire Insurance Co.,* 804 F.2d 9, 10–11 (2d Cir. 1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987); *Schiess–Froriep Corp. v. S.S. Finnsailor,* 574 F.2d 123, 126 (2d Cir.1978).

■ The court must go beyond the mere pleadings of the parties, by examining all of the admissible evidence set forth in the papers and considering all inferences reasonably deducible from such evidence, in determining whether there are any genuine issues of material fact which would necessitate a trial. *In re Tobman,* 96 B.R. 429, 433 (Bankr.S.D.N.Y.1989), *rev'd on other grounds,* 107 B.R. 20 (S.D.N.Y.1989); *In re Esposito,* 44 B.R. 817, 821 (Bankr.S.D.N.Y. 1984); *Schwabenbauer v. Board of Education,* 667 F.2d 305, 313 (2d Cir.1981); *George C. Grey Ready–Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.,* 554

F.2d 551, 554 (2d Cir.1977); *United States v. Matheson,* 532 F.2d 809, 813 (2d Cir.), *cert. denied,* 429 U.S. 823, 97 S.Ct. 75, 50 L.Ed.2d 85 (1976).

The submissions of the parties do establish a sufficient record to enable this Court to grant LTV's Motion for Partial Summary Judgment as to the issues relating to proper party in interest, allowability of unamortized original issue discount, and the method of calculating unamortized original issue discount as a matter of law. However, the issue of the amount of unamortized original issue discount applicable to Valley Fidelity's claim on the New Notes is a disputed issue of fact that cannot be decided on LTV's Motion for Partial Summary Judgment.

PROPER PARTY IN INTEREST

■ Valley Fidelity and several of the intervenor respondents have raised a peripheral issue by alleging that Valley Fidelity, as indenture trustee, is not the proper party in interest in this action even though Valley Fidelity, alone, filed the proof of claim which is being objected to in LTV's Motion. These respondents would have the movant join each individual Old Debenture and New Note holder. This Court does not agree with the respondent's arguments.

Code § 501(a), in part, provides that "[a] creditor or an indenture trustee may file a proof of claim." *See also,* H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 351 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 61 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5847, 6307 ("An indenture trustee representing creditors may file a proof of claim on behalf of the creditors he represents"). Bankruptcy Rule 3003(c)(5) specifies that "[a]n indenture trustee may file a claim on behalf of all known or unknown holders of securities issued pursuant to the trust instrument under which it is trustee." Thus the claims at issue are precisely the kind contemplated by the Code and Rule.

The Indenture dated as of December 1, 1982 between The LTV Corporation and Mercantile National Bank at Dallas, Trustee (predecessor in interest to Valley Fidelity) under which the Old Debentures were issued provides in Section 6.02 that "[a]ll rights of action and of asserting claims under this Indenture, or under any of the Debentures, may be enforced by the Trustee *without possession of any of the Debentures,* or the production thereof on any trial or other proceeding relative thereto...." Section 7.01 of the same Indenture requires "[i]n case an Event of Default has occurred (which has not been cured or waived) the Trustee *shall* exercise such of the rights and powers vested in it by this Indenture...." (*Emphasis added*). The Indenture under which the New Notes were issued has nearly identical clauses in the same numbered sections.

Therefore, based on the foregoing, it is disingenuous for the indenture trustee which filed a proof of claim on behalf of bondholders in compliance with the Code, the Rules, and its indenture agreement to raise the objection that it is not the proper party in interest when *its* filed proof of claim is contested by the debtor.

CLAIMS FOR UNAMORTIZED ORIGINAL ISSUE DISCOUNT

■ The issue of whether a claim for unamortized original issue discount should be allowed pursuant to § 502(b)(2) of the Code is the real driving force behind the keen interest that has been shown in LTV's Motion for Partial Summary Judgment on claims by the indenture trustee and by other similarly situated intervenor indenture trustees. Section 502(b)(2) of the Code provides that the court shall determine the amount of a creditor's claim and allow the claim "except to the extent that ... (2) such claim is for unmatured interest." The legislative history of § 502(b)(2) states that:

Paragraph (2) requires disallowance to the extent that the claim is for unmatured interest as of the date of the petition. Whether interest is matured or unmatured on the date of bankruptcy is to be determined without reference to any ipso facto or bankruptcy clause in the agreement creating the claim. Interest disallowed under this paragraph includes postpetition interest that is not yet due and payable, *and any portion of prepaid interest that represents an*

*original discounting of the claim, yet that would not have been earned on the date of bankruptcy.* For example, a claim on a $1,000 note issued the day before bankruptcy would only be allowed to the extent of the cash actually advanced. If the original discount was 10% so that the cash advanced was only $900, then notwithstanding the face amount of the note, only $900 would be allowed. If $900 was advanced under the note some time before bankruptcy, the interest component of the note would have to be pro-rated and disallowed to the extent it was for interest after the commencement of the case.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 352–353 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 62 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5848, 6308–6309. (Emphasis added).

The issuance of debentures with face values in excess of the consideration received by the issuer has become commonplace in today's financial system. These debentures include both zero coupon bonds issued at a deep discount with no stated interest rate, and other bonds, such as "junk bonds", which are often issued for consideration less than the face amount to reflect the risk of nonpayment which has not been fully compensated for by the stated interest rate of the debenture. The difference between the proceeds received by the issuer, before issuance expense, and the face amount of the debentures repayable by the issuer at maturity is usually referred to as original issue discount (OID).

In actuality, OID is nothing more or less than additional interest associated with a particular debenture. When purchasing debentures the "market" sets the appropriate rate of interest to compensate the purchaser for allowing the issuer to use the proceeds of the issue for a specified period of time, and for the various risks associated with lending process such as expected inflation and the risk of nonpayment. If the proceeds from a particular issue are less than the face amount of the debentures, the "market" is telling the issuer that the stated rate of interest is too low, and the differential between consideration paid for the debenture and the amount received by the purchaser at maturity is intended to compensate the purchaser for buying a debenture with a stated interest rate below market levels. The Internal Revenue Service (IRS) and the Financial Accounting Standards Board (FASB) both have detailed guidelines to force the issuer and purchaser to reflect the underlying economic substance of original issue discounts. *See* I.R.C. § 1273(b) (if a debt instrument is exchanged for property which is regularly traded on an established market the issue price of the debt instrument is the fair market value of that property); Accounting Policies Board ("APB") Opinion No. 21 (August 1971) at ¶ 12 ("the note should be recorded at the fair value of the property, goods, or services or at an amount that reasonably approximates the market value of the note, whichever is the more clearly determinable").

Unmatured interest is without question not an allowed claim under § 502(b)(2) of the Code. The dispute arises when we have the concept of OID which in economic reality is interest, but not specifically denominated as such. It is therefore determined that semantics should not distort the rationale and purpose of the Code and that, *in the fact situation before this Court,* unamortized original issue discount on a note or debenture is indeed unmatured interest which is not an allowable claim under Code § 502(b)(2).

The only case that deals squarely with the issues presented in LTV's Partial Motion for Summary Judgment is Judge Cosetti's memorandum opinion in *In re Allegheny International, Inc.,* 100 B.R. 247 (Bankr.W.D.Pa.1989), *appeal pending,* No. 89–1781 (W.D.Pa.). Many of the indenture trustees' and intervenor respondent's arguments raised herein are dealt with in the *Allegheny* decision. For example, the reliance on the Bankruptcy Act case of *In re Radio–Keith–Orpheum Corp.,* 106 F.2d 22 (2d Cir.1939), *cert. denied,* 308 U.S. 622, 60 S.Ct. 377, 84 L.Ed. 519 (1939) is unfounded. In *Radio–Keith–Orpheum Corp.* the court was dealing with the permissible treatment of oversecured claimants under a consensu-

al plan of reorganization, which has no bearing on the unsecured claimant's opposition to the Motion before this Court.

The respondents also argue that the exchange of the Old Debentures for the New Notes was merely a "bookkeeping" entry that should not be accorded any economic or legal significance, and that if unamortized OID is not an allowable claim, the amount of unamortized OID calculated on the New Notes should be based on the amount of consideration given for the Old Debentures at the time of purchase. This strained interpretation of the facts flies in the face of even a cursory reading of the instruments. Maturity dates, interest rates, and sinking fund requirements have all been changed in the New Notes. Furthermore, this is not a situation where there was an involuntary exchange. The potential consequences of an exchange were fully disclosed to the holders of the Old Debentures in the Offering Circular dated May 1, 1986 as follows:

> Consummation of the Exchange Offer may have significant bankruptcy consequences for holders of New Securities. In general, a note, bond or debenture represents a potential bankruptcy claim equal to its face amount, plus accrued and unpaid interest through the date of commencement of the bankruptcy case, *less unamortized original issue discount,* if any.... To the extent that the Exchange Offers involve the issuance of New Notes at an original issue discount, exchanging holders may have a smaller bankruptcy claim immediately thereafter than at present. (Emphasis added).

As a last resort, the respondents argue that the practical consequences of not allowing claims for unamortized original issue discounts would be devastating to debtors attempting a "workout" because creditors would not participate if they could potentially end up with a smaller claim in a bankruptcy proceeding. The respondent's urge this Court to exercise its equitable powers under *Pepper v. Litton,* 308 U.S.

295, 60 S.Ct. 238, 84 L.Ed. 281 (1939), in order to prevent such a result. However, this Court does not believe that its decision will have the drastic effect that the respondents envision. This is especially so, as the potential for a lesser or greater than felicitous treatment of specific claims in bankruptcy has always played a part in "workouts",[1] and undoubtably participants will continue to carefully weigh the risks and rewards to be gained from such efforts.

The respondents have attempted to complete their painting of a picture dramatizing the implications of a decision disallowing unamortized OID by raising a variety of scenarios which are neither analogous nor before this Court. The respondents argue that courts would have to apply the rationale of not allowing unamortized OID on notes or debentures to *all* other kinds of obligations of the debtor including compromised trade debt and trade discounts which by distorted analogy would likewise constitute unmatured interest. Those scenarios are not before this Court, and are not embraced in a holding that unamortized OID on notes or debentures constitutes unearned or unmatured interest subject to disallowance under Code § 502(b)(2).

Interest is the payment made for the use of money. The payment of interest by the borrower compensates the lender for the length of time the money is being used by the borrower, the risk of loss of purchasing power over time associated with inflation, and various risks related to the fact that the money may not be paid back in a timely fashion, or at all, because of the financial condition of the debtor at the time set for repayment. As one appellate court has said:

> Ordinarily, bonds are issued at a discount because the promised rate of interest is, due to the condition of the prevailing market, too low to sell at par. It would, therefore, seem that the discount allowed is in the nature of additional interest which accrues over the life of the bond

---

1. See the caveat contained in the disclosure to holders of Old Debentures in the Offering Circular of May 1, 1986, *supra,* containing a typical warning of the potential for adverse treatment in a bankruptcy setting.

and is payable at the maturity of the principal obligation.

*American Smelting & Refining Co. v. United States,* 130 F.2d 883, 885 (3d Cir. 1942).

This Court is also guided by the Supreme Court's holding in *Deputy v. du Pont,* 308 U.S. 488, 60 S.Ct. 363, 84 L.Ed. 416 (1940) which stated:

> In the business world 'interest or indebtedness' means compensation for the use or forbearance of money. In absence of clear evidence to the contrary, we assume that Congress has used these words in that sense. In sum, we cannot sacrifice the 'plain, obvious and rational meaning' of the statute even for 'the exigency of a hard case.' (footnote and citation omitted).

*Id.* at 308 U.S. at 498, 60 S.Ct. at 368; *cf., Helvering v. Union Pacific Co.,* 293 U.S. 282, 55 S.Ct. 165, 79 L.Ed. 363 (1934) ("difference between the capital realized and par value ... must be added to the aggregate coupon payments in order to arrive at the total interest paid.")

In the final analysis of an objection to a proof of claim based on Code § 502(b)(2), a court must always apply the statutory term "unmatured interest" to the particular facts before it. The applicable treatment for tax or financial accounting purposes is not conclusive. Consistent with the legislative history, the essential factor guiding this Court in making its determination of allowability is the underlying economic substance of the transaction. Under the circumstances presented here this Court finds that the New Notes and the Old Debentures were issued at a discount and that the discount represented unmatured interest. Thus under Code § 502(b)(2) the claim for such unmatured interest must be disallowed.

## METHOD OF CALCULATING UNAMORTIZED OID

■ The next matter to be considered is the proper methodology to be used in calculating unamortized OID that is not part of an allowed claim pursuant to § 502(b)(2) of the Code. The respondents discuss several methods of calculating unamortized OID based on IRS guidelines, FASB methodology, and the terms of the Debentures and Notes themselves. While instructive, none of the foregoing is dispositive.

The legislative history of Code § 502(b)(2) suggests that a claim for interest or OID in bankruptcy may be maintained only to the extent such interest or OID has been "earned" by the creditor. Since the enactment of the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), the Internal Revenue Code has mandated that for notes or debentures issued after July 1, 1982 the issuer and the holder of such instruments must employ the constant interest[2] method when calculating, on an annual basis, the amount of OID that is allowed as a deduction or is includible in income. The Senate Finance Committee Report accompanying TEFRA stated that the straight line method "does not represent a proper measurement of interest costs to the issuer," S.Rep. No. 494, 97th Cong., 2d Sess. 210, 212 (1982), U.S. Code Cong. & Admin.News 1982, pp. 781, 966, 968, giving the following example:

> Assume a 15–percent rate. Suppose a business wants to borrow $1 and then borrow at the end of the year to pay all interest charges for the year, and repeat this sequence each year for 30 years. Its interest payments would be 15 cents in the first year, 17.3 cents the second year (15 percent interest on the outstanding balance of $1.15), and so on, and would grow exponentially, eventually equalling $8.64 in the 30th year. At the end of 30 years, the overall debt would mount up to $66.21. A total of $65.21 in interest would be paid, and deducted, over the period, but the deduction would start small and grow.
>
> The taxpayer could achieve the same substantive result by issuing a zero-coupon bond at a price of $1 redeemable for $66.21 in 30 years. However, by using the OID bond, the taxpayer can obtain [under pre–1982 law] a deduction of $2.17 each year ($65.21 divided by 30).

2. Also known as yield-to-maturity, effective interest, and economic accrual.

58

Thus the OID bond allows larger interest deductions in early years than borrowing the same with ordinary loans. In this example, the taxpayer deducts in the first year more than twice the amount borrowed and more than 14 times the real interest. Conversely, the purchaser of the OID bond included more interest in his income in early years than the purchaser of an ordinary bond.

*Id.* at 210, U.S.Code Cong. & Admin.News 1982, p. 966. *See also,* B. Bittker and J. Eustice, *Federal Income Taxation of Corporations and Shareholders* ¶ 4.41 (5th ed. 1987). This method of amortizing OID for financial accounting purposes has also been required since 1972. APB Opinion No. 21 (August 1971).

The legislative history of Code § 502(b)(2) uses the term "pro-rated" in discussing the issue of original issue discount. The term pro rate means "[p]roportionately; according to a certain rate, percentage, or proportion." *Black's Law Dictionary* at 1098 (5th ed. 1979). In the transactions before it, this Court finds that the constant interest method of proportionately allocating OID over the life of the note or debenture as set forth in I.R.C. § 1272 best comports with the Congressional intent and the economic reality of the creditor's claims.

The face or maturity value of a debenture is a given, but to calculate OID, the value paid for the debenture must be determined. The value given in exchange for the debenture is the cash given by the purchaser or, in an exchange transaction, the fair market value of property given up in the exchange transaction. The date of valuation of property given in exchange for the debenture is the date the exchange occurred.

CONCLUSION

To summarize this Court's holding, it was determined that:

1. Valley Fidelity, the indenture trustee, is the proper party in interest pursuant to Code § 501(a) and Rule 3003(c)(5);

2. A claim for unamortized OID is not allowable under Code § 502(b)(2);

3. The constant interest method of calculating unamortized OID is the proper method to use;

4(a). The amount of unamortized OID on the Old Debentures can be readily calculated applying this Court's holding to the uncontroverted evidence; and,

4(b). The amount of unamortized OID on the New Notes can not be calculated until the value of the Old Debentures on the exchange date, which is subject to a dispute, is determined by further proceedings of this Court.

Based on the foregoing discussion, LTV's Motion for Partial Summary Judgment is granted with the exception of its objection to the claim for unamortized OID on the New Notes which is subject to a real factual dispute as to the value of the Old Debentures given in exchange for the New Notes on the date of the exchange and for which further proceedings will be necessary. As to the Old Debentures, the parties in their 13(h) Statements agree on the amount of cash received by the debtor upon its issuance of the Old Debentures and the amount of unamortized original issue discount can be readily calculated.

Submit an Order in accordance with the foregoing.