## In re PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE, Debtor.

### Bankruptcy No. 88–00043.

United States Bankruptcy Court,
D. New Hampshire.

April 13, 1990.

See also, Bkrtcy., 112 B.R. 49.

Richard Levin, for Public Service Co.

Geoffrey B. Kalmus, J. Michael Deasy, for Unsecured Creditors Committee.

Richard N. Tilton, Howard J. Berman, for Equity Committee.

Harold T. Judd, Concord, N.H., Asst. Atty. Gen., Mark W. Vaughn, Manchester, N.H., for the State of N.H.

Virginia A. Greiman, Wellesley Hills, Mass., U.S. Trustee.

George J. Wade, Barbara Gould Overend, for Citicorp and Consol. Utilities & Communications, Inc. (CUC).

Paul R. Gioia, Examiner, George A. Hahn, Michael S. Schreiber, for examiner.

John B. Nolan, Jeffrey G. Grody, Janice B. Grubin, Katherine A. Burroughs, for Northeast Utilities Service Co.

Victor Bass, Boston, Mass., for Maryland Nat. Bank as Indenture Trustee Co.

Paul A. Savage, Concord, N.H., for Pinetree Power, Inc., Pinetree Tamworth, Bio Energy.

Ted A. Berkowitz, New York City, for First Fidelity, Nat. Ass'n, New Jersey, Indenture Trustee.

Peter Nils Baylor, Boston, Mass., for Bank of New England, Indenture Trustee.

Robert Drain, New York City, for Shearson, Lehman, Hutton, Inc.

Paul R. DeFilippo, Newark, N.J., for Midlantic Nat. Bank.

Lawrence R. Katz, Boston, Mass., for Small Power Producers.

Bradford Paul Anderson, Newton, Mass., for New England Power Service.

Robert C. Richards, for Martin Rochman, Edward Kaufman, and Robert Richards.

Allen M. Rideout pro se, and for Allene L. Rideout.

Harry Saxon, pro se.

## MEMORANDUM OPINION ON "OID" ISSUE

JAMES E. YACOS, Bankruptcy Judge.

This decision involves the debtor's Motion for Partial Summary Judgment on Objection to Claim of Midlantic National Bank, as well as the claimant's Objection to Confirmation of the Third Amended Joint Plan of Reorganization proposed by Northeast Utilities Service Company and others. Both disputes concern whether unamortized original issue discount ("OID")[1] is allowable under Section 502(b)(2). This Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(B) and (L), and the general reference order dated February 11, 1985 by the U.S. District Court for New Hampshire. A hearing was held on April 4, 1990 on both disputes, in conjunction with the hearings on the pending plan of reorganization, and I then took the matter under submission.

### FACTS

Midlantic National Bank is the Indenture Trustee under the Indenture dated October 15, 1984 between Public Service Company of New Hampshire and Midlantic for Public Service's 17 1/2% Debentures due 2004. These unsecured debentures were issued in the aggregate principal face amount of $425,000,000, as part of financing units consisting of debentures and warrants to purchase common stock. In response to Public Service's Chapter 11 filing on January 28, 1988, Midlantic filed a proof of claim on February 5, 1988, and then filed an amended proof of claim on May 13, 1988 in the amount of $485,895,559.88. These debentures are treated under Class 10 of the pending plan as unsecured claims along with all other general unsecured claims against the debtor.

Public Service objected to the proof of claim and a stipulation was entered into between the parties on April 4, 1990 as to the principal and interest allowable. Principal was allowed in the amount of $400,236,000 including OID that had matured as of the filing date. Prepetition interest at the stated rate of interest in the debentures was allowed in the amount of $54,865,668, and prepetition interest on interest was allowed in the amount of $1,736,448. However, this stipulation expressly reserved the question of whether any additional OID was allowable.

The plan defines an allowed claim in Class 10 to consist of "the principal amount of a claim less any unamortized original issue discount as of the Petition Date, plus interest at the nonpenalty contract rate accrued up to the Petition Date" along with the right to post-petition interest at a common rate to effectuate a cap amount of the approximately $110,600,000 available for this purpose under the plan. Midlantic estimates that under the plan, as of November 1989, it would receive approximately $395 million plus pro-rata post-petition interest of approximately $51 million. Midlantic would also receive approximately $59.5 million[2] in postpetition OID, in addition to the OID included in its allowed claim as of the case filing date, if its claim is sustained. This claim is asserted even though the pay-off of these debentures on the effective date of the plan will occur long before the maturity date so that a considerable portion of the OID will *never*

---

**1.** OID is defined as follows: "The difference between the proceeds received by the issuer, before issuance expense, and the face amount of the debentures repayable by the issuer at maturity." *In re Chateaugay Corp.,* 109 B.R. 51, 55 (Bankr.S.D.N.Y.1990).

**2.** Public Service claims the OID would amount to a slightly higher figure that is immaterial to this decision. The dispute as to the calculation of the OID is the result of a difference in how to value the warrants which were issued as a "package" with the debentures. This calculation question will be resolved at a subsequent hearing.

mature within the meaning of § 502(b)(2) of the Code.

If Midlantic's objection to the plan is sustained the effect will be to bar confirmation of the plan due to a $900 million cap in claims for Class 10 that will be exceeded.[3]

## LEGAL DISCUSSION

■ Section 502(b)(2) of the Code expressly excludes a "claim ... for unmatured interest." Midlantic does not seriously dispute the OID is unmatured interest, especially in light of the recent decision of Bankruptcy Judge Lifland in *In re Chateaugay Corp.*, 109 B.R. 51 (S.D.N.Y.1990). As Judge Lifland explained:

> The issuance of debentures with face values in excess of the consideration received by the issuer has become commonplace in today's financial system. These debentures include both zero coupon bonds issued at a deep discount with no stated interest rate, and other bonds, such as "junk bonds", which are often issued for consideration less than the face amount to reflect the risk of nonpayment which has not been fully compensated for by the stated interest rate of the debenture. The difference between the proceeds received by the issuer, before issuance expense, and the face amount of the debentures repayable by the issuer at maturity is usually referred to as original issue discount (OID).
>
> In actuality, OID is nothing more or less than additional interest associated with a particular debenture. When purchasing debentures the "market" sets the appropriate rate of interest to compensate the purchaser for allowing the issuer to use the proceeds of the issue for a specified period of time, and for the various risks associated with lending process such as expected inflation and the risk of nonpayment. If the proceeds from a particular issue are less than the face amount of the debentures, the "market" is telling the issuer that the stated rate of interest is too low, and the differential between consideration paid for the debenture and the amount received by the purchaser at maturity is intended to compensate the purchaser for buying a debenture with a stated interest rate below market levels. The Internal Revenue Service (IRS) and the Financial Accounting Standards Board (FASB) both have detailed guidelines to force the issuer and purchaser to reflect the underlying economic substance of original issue discounts....
>
> Unmatured interest is without question not an allowed claim under § 502(b)(2) of the Code. The dispute arises when we have the concept of OID which in economic reality is interest, but not specifically denominated as such. It is therefore determined that semantics should not distort the rationale and purpose of the Code and that *in the fact situation before this Court,* unamortized original issue discount on a note or debenture is indeed unmatured interest which is not an allowable claim under Code § 502(b)(2).

*In re Chateaugay Corp., supra* at 55. Accord, *Allegheny Int'l, Inc.,* 100 B.R. 247, 249–51 (Bankr.W.D.Pa.1989), appeal pending [4].

---

**3.** Interestingly, IBJ Schroder Bank & Trust Company, the indenture trustee for $275 million in principal amount of unsecured debentures issued by Public Service Company, which are also treated under Class 10 of the Plan, has not objected to confirmation of the plan. It states in its pleading on this issue:

> Schroder has not objected to confirmation of the Plan because it believes that the Plan, which represents the culmination of many months of negotiations between the many parties-in-interest, is in the best interest of Class 10 creditors. It is, indeed, a rare Chapter 11 case in which unsecured creditors receive full payment of their prepetition claims,

let alone any postpetition interest, and there can be little doubt that holders of Class 10 Allowed Claims will receive more under the Plan than they would receive if the Debtor were liquidated under Chapter 7. [Court Document 3380].

Nevertheless, Schroder has stated they reserve the right to object to confirmation if Midlantic's objection is sustained so Schroder can receive the same treatment for their Class 10 debentures.

**4.** The *Allegheny* court reviewed the Bankruptcy Act case, *In re Radio–Keith–Orpheum Corp.,* 106 F.2d 22 (2d Cir.1939), upon which Midlantic

This Court has previously applied the "plain meaning rule" to statutory construction regarding the Bankruptcy Code in this case. See *In re PSNH*, 108 B.R. 854, 875–76 (Bankr.D.N.H.1989). That rule leads to the conclusion that the express language of Section 502(b)(2) bars Midlantic's claim. The word "interest" in the statute is clearly sufficient to encompass the OID variation in the method of providing for and collecting what in economic fact is interest to be paid to compensate for the delay and risk involved in the ultimate repayment of monies loaned. Confirmation of this reading of the statute, if needed, is readily provided in the legislative history. That history makes it clear that unamortized original issue discount was to be classified as unmatured interest under Section 502(b)(2):

> *Interest disallowed under this paragraph* [§ 502(b)] *includes* postpetition interest that is not yet due and payable, and *any portion of prepaid interest that represents an original discounting of the claim, yet that would not have been earned on the date of bankruptcy.* For example, a claim on a $1,000 note issued the day before bankruptcy would only be allowed to the extent of the cash actually advanced. If the original discount was 10 percent so that the cash advanced was only $900, then notwithstanding the face amount of note, only $900 would be allowed. If $900 was advanced under the note some time before bankruptcy, the interest component of the note would have to be pro-rated and disallowed to the extent it was for interest after the commencement of the case.

(Emphasis added) H.R.Rep. No. 595, 95th Cong. 1st Sess. 352, 353, *reprinted in* 1978 U.S.Code Cong. & Admin.News 6308–09; S.Rep. No. 989, 95th Cong.2d Sess. 62, *reprinted in* 1978 U.S.Code Cong. & Admin. News 5787, 5848.

The binding and overriding effect intended by the § 502(b)(2) provision is also emphasized in the legislative history:

> Paragraph (2) requires disallowance to the extent that the claim is for unmatured interest as of the date of the petition. Whether interest is matured or unmatured on the date of bankruptcy is to be determined without reference to any *ipso facto* or bankruptcy clause in the agreement creating the claim.

H.R. No. 595, 95th Cong. 1st Sess. 352, *reprinted in* 1978 U.S.Code Cong. & Admin.News 6308; S.Rep. No. 989, 95th Cong., 2d Sess. 62, *reprinted in* 1978 U.S. Code Cong. & Admin.News 5848.

■ Nevertheless, Midlantic argues that equitable considerations should override the text of the statute in this case. Midlantic says that this is a solvent estate[5], and Section 502(b)(2) was merely a codification of the general rule that unmatured interest was disallowed, but that that general rule was always subject to the exception of a solvent estate. However, the statute is clear that the only claim that could be subject to any equitable rules is the claim allowed as of the filing date, which only includes the principal balance as of that date, and the matured unpaid interest accrued whether in the form of OID or a stated interest rate *as of that date*. The plan does allow postpetition interest *on the*

---

relies in making its claim for unamortized original issue discount, and found the case unpersuasive. The court explained: "In light of both the clear language of the statute and the supporting legislative history of section 502(b), we doubt the vitality and do not rely upon *In re Radio–Keith–Orpheum.*" *Allegheny Int'l, Inc., supra*, at 250–51.

5. Under the consensual plan presented it is unnecessary for the Court to make a finding as to whether this estate is solvent. Put another way, creditors are getting postpetition interest not because of any valuation or determination of solvency but only because the parties have con-

sented to a plan that avoids the issue. That plan is also dependent upon the Rate Agreement with the State of New Hampshire which is conditioned upon confirmation of the present plan. The solvency question—if presented for actual decision after sustaining Midlantic's objection and denying confirmation of the pending plan—would be anything but a simple proposition. So too would be the question of whether "solvency" in a unique case of this nature would actually *require* allowance of post-petition interest. Cf. *Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162 (1946).

*allowed claim.* The statute does not allow for equity to allow more.

## CONCLUSION

Public Service's Motion for Partial Summary Judgment to the objection to Claim of Midlantic will be granted by separate order in accordance with this opinion, which will also provide for the further hearing necessary to resolve remaining questions as to the quantification of the claim. Midlantic's Objection to Confirmation of the plan also will be overruled by separate order in conjunction with action on the pending plan of reorganization.