### In re PENGO INDUSTRIES, INC. and Pengo Finance, N.V., Debtors.

### TEXAS COMMERCE BANK NATIONAL ASSOCIATION, Appellant,

v.

### Dr. Seymour LICHT and the Official Unsecured Creditors Committee, Appellees.

No. CA4–90–238–A.

United States District Court, N.D. Texas, Fort Worth Division.

July 3, 1991.

Edward L. Rothberg, Weycer Kaplan Pulaski & Zuber, Houston, Tex., for appellant Texas Commerce Bank.

Edgar Booth, Richard H. Kuh, Donald L. Kuba, Warshaw Burstein Cohen, Schlesinger & Kuh, New York City, for appellee Creditors Committee.

Jerry Kent Sawyer, Gandy Michener Swindle Whitaker & Pratt, Fort Worth, Tex., G. Michael Curran, Akin Gump Strauss Hauer & Feld, Stephan Peter Perison, Law Offices of Stephan P. Perison, Dallas, Tex., for appellees Pengo Industries and Pengo Finance.

Seymour Licht, pro se.

## MEMORANDUM OPINION AND ORDER

McBRYDE, District Judge.

This action comes before the court as an appeal from an order entered by the United States Bankruptcy Court, Northern District of Texas, Fort Worth Division, the Honorable Massie Tillman presiding. The court, having reviewed the briefs of appellant, Texas Commerce Bank National Association ("TCBNA") and appellees, Dr. Seymour Licht ("Licht") and the Official Unsecured Creditors Committee ("Committee"), the record on appeal and applicable authorities, has determined that the bankruptcy court's order sustaining objections to claim of TCBNA should be reversed.

### Jurisdiction

This is an appeal from an order of the bankruptcy court reducing the claims of the holders of Class A and Class B Non–Interest Bearing Senior Subordinated Guaranteed Debentures due in 1991 ("Class A and Class B Debentures") on the ground that they were issued at a discount and that the claims therefore included additional interest which could not be allowed. This court's jurisdiction exists pursuant to 28 U.S.C. § 158(a).

### Underlying Facts and Proceedings

The underlying case was presented to the bankruptcy court on stipulated facts as follows:

1. TCBNA is the Indenture Trustee with respect to the Class A Non–Interest Bearing Convertible Senior Subordinated Guaranteed Debentures due in 1991 ("Class A Debentures") and Class B Non–Interest Bearing Convertible Senior Subordinated Debentures due in 1991 ("Class B Debentures"), both issued by Pengo Finance, N.V. ("Finance") and guaranteed by Pengo.

2. TCBNA filed a proof of claim with respect to the Class A Debentures in the amount of $4,552,000, representing the full face amount of the Class A Debentures allegedly outstanding as of the date of the filing of Pengo's involuntary bankruptcy petition ("Petition Date").

3. TCBNA filed a proof of claim with respect to the Class B Debentures in the amount of $5,439,500, representing the full face amount of the Class B Debentures allegedly outstanding as of the Petition Date.

4. Licht, a holder of 8½% Debentures, duly objected to the two claims filed by TCBNA for the full face amount of the

Class A Debentures and Class B Debentures.

5. The Committee duly objected to the two claims filed by TCBNA for the full face amount of the Class A Debentures and Class B Debentures.

6. Subsequently, TCBNA filed an amended claim with respect to the Class A Debentures in the amount of $2,076,500, representing the full face amount of all Class A Debentures that it is aware are currently outstanding.

7. Subsequently, TCBNA filed an amended claim with respect to the Class B Debentures in the amount of $2,236,000, representing the full face amount of all Class B Debentures that it is aware are currently outstanding.

8. The Class A Debentures and Class B Debentures were issued in exchange for certain 8½% Debentures, as more fully described below.

9. On or about December 1, 1980, Finance, a Netherlands Antilles corporation and a subsidiary of Pengo, issued $22,500,000 of 8½ Convertible Subordinated Guaranteed Debentures due 1995 ("8½% Debentures") through Chemical Bank, as indenture trustee.

10. If an 8½% Debenture was converted into its equivalent number of shares of Pengo common stock based upon the $32.25 conversion price, each Debenture would equate to 31 shares of Pengo common stock. In the third quarter of 1984, when the First Exchange Offer referred to below was implemented, Pengo's common stock was selling at a high of $1.75 and a low of 11/16. If an 8½% Debenture was converted to stock at that time, the 31 shares of Pengo common stock would have been worth a maximum of $54.25 at the high price and a minimum of $21.31 at the low price.

11. The 8½% Debentures were sold to the public by Finance for the full face amount of $1,000 each.

12. Because of continued financial difficulties, neither Finance nor Pengo as guarantor was able to make the interest payments due with respect to the 8½% Debentures on December 1, 1983, 1984, 1985, 1986 and 1987. Pengo, however, on December 1 of each of the above listed years, accrued interest expense of $85.00 per $1,000 face amount of the 8½% Debentures still outstanding. After the exchange in 1984, $9,295,000 in principal amount of 8½% Debentures were still outstanding. This resulted in an annual interest accrual by Pengo of $790,075. Pengo *did not* accrue any interest expense relating to the $13,205,000 in principal amount of the Class A and Class B Debentures then issued and outstanding.

13. The 8½% Debentures were suspended from trading on the Luxembourg Stock Exchange on December 12, 1983. When trading was suspended, the 8½% Debentures were priced at approximately 29% of their principal amount, or $290.00 per $1,000 Debenture.

14. On or about June 20, 1984, Finance offered to exchange each 8½% Debenture for a non-interest bearing Class A Debenture in the principal amount of $500.00 and a non-interest bearing Class B Debenture in the principal amount of $500.00, pursuant to an Offering Circular dated June 20, 1984 ("First Exchange Offer").

15. The 8½% Debentures mature in 1995 and the maturity date for both Class A and Class B Debentures was 1991.

16. The 8½% Debentures were subordinated to payment in full of the Class A and Class B Debentures.

17. The Class A Debentures were convertible into Pengo common stock at a price per share equal to the greater of $1.25 or 105% of the closing sale price of the stock on the exchange date. If a $500 Class A Debenture was converted into Pengo common stock on the exchange date, which was during the third quarter of 1984, such stock would have had a value based upon the high of $1.75 and a low of 11/16 as follows:

High Conversion Price for Class A ($1.75) (1.05)  = $1.84
Low Conversion Price for Class A                  = $1.25

High Value (($500) ($1.75))/($1.84) = $475.54
Low Value (($500) ($0.69))/(1.25)   = $276.00

---

18. The Class B Debentures were convertible into Pengo common stock at a price per share equal to $4.50. If a $500 Class B Debenture was converted into Pengo common stock on the exchange date, which was during the third quarter of 1984, such stock would have had a market value based upon the high of $1.75 and a low of 11/165 (sic) as follows:

High Value (($500) ($1.75))/($4.50) = $194.44
Low Value (($500) ($0.69))/($4.50) = $ 76.66

---

19. The equivalent stock value of a $1,000 8½% Debenture at the time of the First Exchange Offer was:
      High Value = $54.25
      Low Value  = $21.31
The equivalent common stock value of an 8½% Debenture at the time of the First Exchange Offer was converted into $500 principal amount of Class A Debentures and $500 principal amount of Class B Debentures was:

High Value ($475.54 + $194.44) = $669.98
Low Value ($276.00 + $ 76.66) = $352.66

---

20. The First Exchange Offer was required by a certain standstill agreement between Pengo and its senior secured lenders as part of an out-of-court workout to enable Pengo to restructure its various indebtedness. The First Exchange Offer expired on July 12, 1984, and tender offers were irrevocable until August 15, 1984.

21. Following this First Exchange Offer, some $13,205,000 of the 8½% Debentures (58.7% of the issue) were tendered and accepted. Finance and Pengo, as guarantor, remained in default on the 8½% Debentures that were not tendered because of their failure to make interest payments on the 8½% Debentures from and after December 1, 1983. Finance and Pengo never accrued any interest expenses with respect to the Class A Debentures and Class B Debentures.

22. The Class A Debentures and Class B Debentures were not traded on the date of issuance or thereafter. A significant number of the Class A Debentures and Class B Debentures were converted to Pengo common stock.

23. The 8½% Debentures traded at approximately 34%, or $340.00 per each $1,000 debenture, shortly before the Offering Circular was issued on the over-the-counter market in the United States.

24. The holders of 8½% Debentures who tendered their debentures for exchange waived the interest payment due on December 1, 1983.

Having considered the stipulated facts and the arguments of counsel, the bankruptcy court concluded that the objections of Licht and the Committee should be sustained and the claims filed by TCBNA

should be reduced to eliminate unmatured interest.

## Issues on Appeal

TCBNA presents one issue on appeal, to wit: whether the bankruptcy court erred as a matter of law by determining that the Class A and Class B debenture claims included additional interest, which could not be allowed.

## Standard of Review

■ The underlying case was tried on stipulated facts. Accordingly, the bankruptcy court issued its ruling as a matter of law. The bankruptcy court's order is therefore subject to *de novo* review. *Pierson & Gaylen v. Creel & Atwood (In re Consolidated Bancshares, Inc.)*, 785 F.2d 1249, 1252 (5th Cir.1986).

## Discussion of Authorities

■ The issue in this case is whether a discount was created as a result of the exchange of 8.5% debentures for Class A and Class B debentures. If a discount was created, then TCBNA's claims for the full face value of the Class A and Class B debentures include unmatured interest, which is not allowable under 11 U.S.C. § 502(b)(2) as part of a claim.

In support of its position that no discount was created, TCBNA relies on *Commissioner v. National Alfalfa Dehydrating & Milling Co.*, 417 U.S. 134, 94 S.Ct. 2129, 40 L.Ed.2d 717 (1974). In that case, a corporation exchanged its preferred stock, which had originally been sold for $50.00 per share, for debentures with a face value of $50.00 each. At the time of the exchange, the fair market value of the preferred stock was less than its original sales price. The issue before the court was whether the corporation was entitled to an income tax deduction for amortizable debt discount claimed to be the difference between the face amount of the debentures and the preferred's value at the time of the exchange. *National Alfalfa*, 417 U.S. at 136, 94 S.Ct. at 2131. The Supreme Court held that when a corporation issues obligations in exchange for its outstanding preferred,

no discount arises if the amount that was received upon issuance of the preferred is equal to the face amount of the obligations issued for exchange. The basis for the court's holding was that from the corporation's perspective it had merely replaced that portion of its paid-in capital represented by its preferred with paid-in capital represented by its debentures, *i.e.*, the corporation did not incur any additional cost for the use of its principal and the corporation's assets were neither increased nor diminished. *Id.* at 151–52, 94 S.Ct. at 2138–39.

In this case, appellee Licht recognizes that no additional cost was incurred by the corporation as a result of the exchange and that Pengo actually benefitted therefrom. Any 8.5% debenture holder who elected to accept the exchange offer "caused Pengo NOT to have to pay $85.00 per year in interest to 1995." Licht brief at 18. Moreover, "the savings to Pengo due to the exchange was significant" and, as a result of the exchange, Pengo's yearly interest expense was reduced from $1,912,500.00 to $790,075.00, which equates to a savings of $8,715,300.00 over the life of the 8.5% debentures. *Id.* at 21–22.

Subsequent cases that have discussed *National Alfalfa* include *Texstar Corp. v. United States*, 688 F.2d 362 (5th Cir.1982); *Gulf, Mobile & Ohio Railroad Co. v. United States*, 579 F.2d 892 (5th Cir.1978); and *Cities Service Co. v. United States*, 522 F.2d 1281 (2nd Cir.1974), *cert. denied*, 423 U.S. 827, 96 S.Ct. 43, 46 L.Ed.2d 43 (1975). Each case distinguished *National Alfalfa* as a case where the original value received for each preferred share was equal to the face amount of the debentures exchanged. *Texstar*, 688 F.2d at 365; *Gulf, Mobile* 579 F.2d at 896; *Cities Service*, 522 F.2d at 1287. The *Gulf, Mobile* case made the further distinction that the exchange in *National Alfalfa* was not a voluntary exchange affected by market forces. In discussing this distinction, the court recognized that:

some exchanges involving preferred shareholders are only euphemistically styled as "voluntary." If, for instance,

preferred stock has accumulated large arrears of undeclared and unpaid dividends, it is not uncommon for corporations to offer to exchange the old preferred for new preferred shares that have no arrears but have a claim to future dividends prior to that of the old preferred. If future earnings are expected to be sufficient to pay only dividends on the prior preferred, the old preferred will be forced to convert or else receive nothing.

579 F.2d at 899 n. 19. The facts of this case fit the "voluntary" exchange scenario described by the Fifth Circuit. In this case, like *National Alfalfa,* the primary purpose of the exchange was to eliminate arrearages, not to save on taxes. *Contra Gulf, Mobile,* 579 F.2d at 899 n. 19.

Appellees seek to distinguish this case from *National Alfalfa.* They rely primarily on two recent bankruptcy court decisions in support of their position. The first case is *In re Chateaugay Corporation,* 109 B.R. 51 (Bankr.S.D.N.Y.1990); the second is *In re Allegheny International, Inc.,* 100 B.R. 247 (Bankr.W.D.Pa.1989). Neither case is apropos because both deal with situations where the face amount of the new debentures exceeded the original consideration paid for the preferred stock exchanged. The *Allegheny* case specifically recognizes that where the original consideration equals the face amount of the debentures, no discount can arise since the issue price equals their face amount. 100 B.R. at 252. The *Chateaugay* case is further distinguishable because there the court took into account the language contained in an offering circular in determining that the exchange resulted in original issue discount. *Chateaugay,* 109 B.R. at 56. The offering circular in this case was not admitted into evidence at trial and is, therefore, not considered as any evidence on appeal. *Hill v. Trustees of Indiana University,* 537 F.2d 248, 251 n. 2 (7th Cir.1976); *Tanner v. United States,* 401 F.2d 281, 288 (8th Cir.1968), *cert. denied,* 393 U.S. 1109, 89 S.Ct. 922, 21 L.Ed.2d 806 (1969). The statements contained in such offering circular would not be dispositive in any event.

Based on the facts as stipulated by the parties, the court concludes that the claim submitted by TCBNA did not include any claim for original issue discount. The bankruptcy court erred as a matter of law in concluding otherwise. Accordingly,

The court ORDERS that the bankruptcy court's order sustaining objections to TCBNA's claim be and is hereby reversed.